**Albert Lee CRAIN, Plaintiff/Appellee,**

v.

**Velma Christine CRAIN,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 14, 1996.

Permission to Appeal Denied by the
Supreme Court July 8, 1996.

Thomas L. Whiteside, Fowlkes & Whiteside, Nashville, for appellant.

Barbara J. Walker, Columbia, for appellee.

### OPINION

KOCH, Judge.

This appeal involves the dissolution of a 27–month marriage. After declaring the parties divorced pursuant to Tenn.Code Ann. § 36–4–129(b) (1991), the Chancery Court for Maury County awarded the parties the property held in their separate names and declined to award the wife rehabilitative spousal support. The wife now takes issue with the trial court's denial of her request for rehabilitative spousal support. We have determined that the wife is not entitled to spousal support under the facts of this case and, therefore, affirm the judgment.

## I.

Velma Christine Crain and Albert Lee Crain were first married in 1949. They divorced in 1973, and Mr. Crain remarried shortly thereafter. Mr. Crain was a radio engineer in the business of owning and constructing radio stations. He was quite successful with his business after his divorce in 1973. Mr. Crain began visiting the first Ms. Crain every weekend after separating from his second wife in April 1991. Mr. Crain eventually divorced his second wife in April 1992.

The Crains married for the second time in July 1992. Mr. Crain moved from Mississippi to Columbia where Ms. Crain owned a home. Ms. Crain had been working for the Veterans Administration Hospital in Nashville for approximately five years. She managed the eye clinic and earned approximately $16,000 per year. Shortly after the marriage, Ms. Crain retired from the Veterans Administration because she expected to become a homemaker and to travel with Mr. Crain on his business trips.

After the marriage, Mr. Crain bought Ms. Crain a new $18,000 automobile and helped her refinance her home mortgage to reduce the interest rate from 11% to 7.5% and to shorten the term of the loan from fifteen to ten years. He provided Ms. Crain with $1,500 per month for her personal and household needs, including her mortgage payments. Mr. Crain also opened a joint checking account, and both parties liberally withdrew funds from this account for personal and marital expenses.[1] Ms. Crain, for example, used funds from the account to pay for eye-lid surgery that had been performed before the marriage.

The Crains' marriage was short-lived. Mr. Crain moved out of the house after only twenty months and filed for divorce in March 1994. Ms. Crain counterclaimed for divorce and requested alimony *pendente lite*. The trial court directed Mr. Crain to pay Ms. Crain $2,000 per month until the date of the hearing on their divorce. Shortly after a

hearing in October 1994, the trial court entered an order declaring the parties to be divorced without regard to fault and directing that the parties should retain the property presently held in their own names. The trial court also terminated Ms. Crain's alimony *pendente lite* and determined that Mr. Crain would not be required to pay Ms. Crain further spousal support of any sort. Ms. Crain has appealed from this decision.

## II.

Ms. Crain insists that the trial court misapplied the statutory factors when it denied her request for rehabilitative spousal support. She asserts that the trial court did not give appropriate weight to her age, her limited employment prospects, Mr. Crain's superior earning capacity, and her contributions as a homemaker during the marriage. Mr. Crain responds that Ms. Crain's post-divorce finances are better than her pre-divorce finances, that she obtained many new assets during the marriage, and that Ms. Crain is able to work but has not seriously pursued a job.

There are no hard and fast rules for determining whether a spouse should be required to support a former spouse. *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn.Ct. App.1989). These decisions are heavily fact-dependent and require the careful balancing of many factors, including those identified in Tenn.Code Ann. § 35–5–101(d)(1) (Supp. 1995). *Hawkins v. Hawkins,* 883 S.W.2d 622, 625 (Tenn.Ct.App.1994); *Loyd v. Loyd,* 860 S.W.2d 409, 412 (Tenn.Ct.App.1993). Appellate courts give wide latitude to trial courts' spousal support and maintenance decisions. *Jones v. Jones,* 784 S.W.2d 349, 352 (Tenn.Ct.App.1989). These decisions are, however, subject to appellate review. We will scrutinize them to determine whether they reflect a proper application of the relevant legal principles and whether they are supported by a preponderance of the evidence. *Cranford v. Cranford,* 772 S.W.2d at 50.

---

1. The parties disagreed concerning the amount of their withdrawals from this account. Mr. Crain insisted that Ms. Crain withdrew $48,000 for her personal use; while Ms. Crain accused Mr. Crain of placing $35,000 in a separate account. The trial court did not attempt to resolve these disputes, and we need not do so here.

The most common factors influencing spousal support decisions are the need of the spouse requesting support, the fault of the obligor spouse, and the ability of the obligor spouse to provide support. *Hawkins v. Hawkins*, 883 S.W.2d at 625; *Bull v. Bull*, 729 S.W.2d 673, 675 (Tenn.Ct.App.1987). In the case of marriages of short duration, the justification for spousal support is diminished when the spouse seeking support has contributed little, directly or indirectly, to the marriage. *Flanagan v. Flanagan*, 656 S.W.2d 1, 3–4 (Tenn.Ct.App.1983) (spousal support limited to $750 when the parties' second marriage lasted only thirteen months); *Spencer v. Spencer*, App. No. 01–A–01–9109–CV–00328, slip op. at 7–8, 17 T.A.M. 43–16, 7 T.F.L.L. 1–16, 1992 WL 247641 (Tenn.Ct.App. Oct. 2, 1992) (no spousal support needed following the dissolution of a short-term marriage).

This record contains no grounds for concluding that the trial court misapplied the factors influencing whether Ms. Crain should receive rehabilitative alimony. As a result of the marriage, she has received an $18,000 automobile, funds to pay a pre-existing medical bill, and assistance in obtaining a more favorable mortgage on her home. She has also made liberal use of the funds Mr. Crain placed in their joint account as well as $8,000 in alimony *pendente lite*. The value of these items offsets the value of her contributions to the marriage.

Ms. Crain retired from the Veterans Administration because she anticipated that Mr. Crain would support her for the rest of her life. Mr. Crain did not object to her early retirement but did not demand it either. While her marriage to Mr. Crain played a significant role in her decision to stop working at the age of sixty-three, it would be unfair to find that Mr. Crain was solely responsible for this decision. Ms. Crain must also accept part of this responsibility.

Even though Ms. Crain was sixty-five years old at the time of the hearing, her age and physical condition do not disqualify her from seeking employment. She has held several types of jobs during her career. She requested rehabilitative support but never described what additional training or education she intended to pursue or how this training would enhance her employability. The most significant barrier to her re-employment appears to be her lack of motivation to look for work. Since the separation, she has done little more than "accumulating information concerning return to federal employment." She has not pursued private sector jobs because she favors the government's benefits and because she would "rather not work at McDonald's." Balancing all the equities in this case, Mr. Crain should not be required to pay Ms. Crain rehabilitative spousal support simply because she decided to retire from the Veterans Administration when she married Mr. Crain.

### III.

We affirm the judgment and remand the case to the trial court for whatever other proceedings may be required. We also tax the costs of this appeal to Velma Christine Crain and her surety for which execution, if necessary, may issue.

TODD, P.J., (M.S.) and CANTRELL, J., concur.