FRANKLIN THOMAS BURNS,                      )
                                            )        APPEAL NO.
            PETITIONER/APPELLEE,            )        01-A-01-9705-CH-00218
                                            )
v.                                          )
                                            )        MONTGOMERY
BERNICE A. BURNS,                           )        CHANCERY
                                            )        NO. 96-02-0146
            RESPONDENT/APPELLANT.           )

**FILED**

November 7, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CHANCERY COURT FOR MONTGOMERY COUNTY

AT CLARKSVILLE, TENNESSEE

THE HONORABLE ALEX W. DARNELL, CHANCELLOR

CHRISTINE E. ZELLAR
218 South Second Street, Suite A
Clarksville, Tennessee 37040
        ATTORNEY FOR RESPONDENT/APPELLANT

EDWARD ROBERTSON
PO Box 871
Clarksville, Tennessee 37041-0871
        ATTORNEY FOR PETITIONER/APPELLEE

AFFIRMED AND REMANDED

WALTER W. BUSSART, JUDGE

## OPINION

This is an appeal by respondent/appellant, Bernice A. Burns ("Wife"), from the order of the trial court granting Wife and petitioner/appellee, Franklin Thomas Burns ("Husband"), a divorce, dividing the marital property, and granting temporary alimony. Wife complains the court erred when it divided the parties' property and awarded Wife $400.00 alimony per month for six months. The facts out of which this matter arose are as follows.

Wife and Husband married on December 31, 1992. Prior to the marriage, Husband owned a motorcycle, acreage in Arkansas with a rental house, twenty-eight acres in Clarksville with a trailer, and twenty-two head of cattle. Husband also had money from VA educational benefits. After the marriage, the parties purchased a Yamaha four-wheeler. In order to purchase the four-wheeler, Husband traded in the motorcycle and contributed $2,700.00 from his VA educational benefits. Husband had made payments on the Arkansas property mortgage for nine years prior to the marriage. He paid off the mortgage balance, approximately $2,000.00, during the first year of the marriage. Husband made the payments with the rental income received from his tenants. There is no evidence Wife brought any property into the marriage.

The parties also acquired several items during the marriage. They purchased a used International 464 Tractor for $6,000.00. Husband claimed he paid for half of the tractor with pre-marital funds. The parties also purchased a 1974 Dodge motor home, a time share in the Smokey Mountains, a 1992 Chevrolet Beretta, a 1994 Chevrolet C-1500 truck, and various furnishings.

Doctors diagnosed Husband with cancer during the marriage. Husband sold the Arkansas property while undergoing treatment. Husband realized $30,000.00 from the sale of the property and reinvested the money into a certificate of deposit. He designated the account as payable on death and listed Wife as the beneficiary. He also listed Wife as a joint member on the CD. Husband purchased the CD because he wanted Wife to have the proceeds if he died. Wife also had health problems. She has had Chrons disease since she was twenty-five, but her condition was treatable and

not serious at the time of the final decree.

The record contains little evidence of Wife's employment history or earning capacity. She testified she began working as a real estate agent in early 1996, but claimed she did not have any regular income because it takes time to get established. Husband testified he paid $1,254.00 for her real estate training.

There is more evidence of Husband's earning capacity. Each month Husband receives a military retirement check in the amount of $1,535.00 and a Veteran's Administration disability check in the amount of $91.00. Husband also has seasonal employment at Fort Campbell, Kentucky where he earns an addition $1000.00 a month from mid-April through October.

Husband filed a complaint for absolute divorce on February 28, 1996. Wife filed an answer and counterclaim. The court filed an order on September 25, 1996 and made the following findings:

1. The parties were married on December 31, 1992.
2. The Wife was employed at the time of the marriage. The Husband was retired military with a seasonal job.
3. The Defendant is now a real estate agent and has been for the year 1996.
4. There has been no appreciable accumulation of property values during the marriage.
5. The parties did obtain during the marriage a four-wheeler, a used ractor [sic], a recreational vehicle, time share interest, all of which the Court estimated the enhanced value of $8,000.
6. The real estate owned by the Plaintiff was purchased before the marriage and has not sustained an appreciable increase in value. The Plaintiff owned real estate in Arkansas and paid approximately $2,000 in payments during the marriage and has subsequently sold said property for $30,000 and purchased a certificate of deposit in both parties names in the amount of $30,000. The time share interest that the parties own was purchased for $8,000 and has a net value at the present time of $4,000.

The court then ordered Husband to pay Wife $350.00 as alimony pendente lite for the month of August and reserved ruling on all other issues pending a determination of Wife's physical condition. On November 7, 1996, the court filed an opinion in which it held Wife was entitled to $400.00 per month for six months to balance the equities between the parties. The court filed the final decree of divorce on December 5, 1996.

The court ordered the parties divorced pursuant to Tennessee Code Annotated section 36-4-129(B), awarded each party the "assets now in his or her possession or under his or her control," and awarded Wife alimony of $400.00 per month for six months. Thereafter, Wife filed a timely notice of appeal. There was no court reporter present at the hearing so the parties filed an agreed statement of the facts. Wife lists seven issues; however, these can be narrowed to a review of the court's division of the marital property and the alimony award.

## I. Division of Property

### A.    Classification of Property as Marital or Separate

Tennessee courts have the authority to divide marital property, not separate property. *See* TENN. CODE ANN. § 36-4-121(a)(1) (1996). Thus, it is essential that courts properly classify property before dividing it. ***See Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. App. 1988). Tennessee Code Annotated defines marital and separate property as follows:

> (b) For purposes of this chapter:
> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
> (C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.
> (D) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose; and
> (2) "Separate property" means:
> (A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

*Id.* §36-4-121(b).  Separate property, however, may become marital property under the doctrine of transmutation.  This court has defined the doctrine as follows:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.  One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy.  This may also be done by placing separate property in the names of both spouses.  The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate.  This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital.  The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*See Batson*, 769 S.W.2d at 858 (quoting 2 H. CLARK, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES §16.2, at 185 (1987)).

The parties do not dispute the classification of most of the property.  Both agreed the motor home, the time-share, the 1992 Beretta, the 1994 truck, one-half the value of the tractor, and the furniture were marital property.  Moreover, the parties agreed the combined value of these items equaled $31,100.00.[1]  The parties also agreed the twenty-eight acres in Clarksville, Tennessee and the trailer were Husband's separate property.  Therefore, we do not address the classification of these items.

### 1.     Certificate of Deposit

The highest valued contested item is the certificate of deposit.  Wife contends

---

[1] The parties agreed on the following values:

| | | |
|---|---|---|
| 1974 Motor Home | | $4000 |
| Time Share | | $5500 |
| 1992 Beretta | | $7400 |
| 1994 Truck | | $8300 |
| ½ Tractor | | $2500 |
| Furniture | | $3400 |
| | TOTAL | $31,100 |

the entire CD is marital property under the doctrine of transmutation. To support her argument Wife cites *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn. App. 1991) and *Batson v. Batson*, 769 S.W.2d 849 (Tenn App. 1988). Husband responds that he could not have made a gift of the CD to the marriage because he conditioned the delivery on his death.

Before a court can classify property as marital property based on the theory of transmutation, the court must find: 1) the separate property owner performed an act evidencing an intent to create marital property and 2) the separate property owner failed to rebut the presumption of a gift to the marital estate. *See Batson*, 769 S.W.2d at 858. The separate property owner may rebut the presumption by establishing that one of the legal requirements of a gift is missing. "The formal requirements of a gift are the <u>intention</u> by the donor to make a present gift coupled with the <u>delivery</u> of the subject of the gift by which complete dominion and control of the property is surrendered by the donor." *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. App. 1996) (emphasis added). Thus, a party may establish there was no intention to make a present gift to the marriage by showing an intention that the property remain separate. *See Batson*, 769 S.W.2d at 858. In addition, the separate property owner may rebut the presumption by proving the delivery was incomplete.

It is undisputed that the Arkansas property was Husband's separate property prior to the marriage. Moreover, it is undisputed that Husband paid off the mortgage shortly after the marriage with income derived from renting the property and that Husband used the proceeds from the sale of the property to purchase the CD. Finally, it is undisputed that Husband purchased the CD and listed Wife as a joint member. Thus, Husband performed an act, buying the CD in both parties' names, which triggered the presumption of transmutation. The only question remaining is whether Husband rebutted the presumption of a gift to the marital estate.

Husband contends he rebutted the presumption by proving that he could not have intended to make a gift to the marriage because he conditioned the delivery of the money on his death and a person can not complete delivery of an intervivos gift contingent on their death. Wife does not dispute that Husband placed both names on the CD because he was afraid he might die from cancer, but interprets this act

differently than Husband. Wife argues: "Appellee specifically intended to create a right of survivorship, showing an intent to make a gift to the marriage."[2]

Both parties present interesting arguments. We address Husband's argument first. The doctrine of transmutation rests on the premise that the donor spouse intended the property become marital property, not the donee spouse's separate property. Wife's conclusion that Husband intended to grant her a right of survivorship and, therefore, to make a gift to the marriage is flawed. To explain, had Husband given Wife a right of survivorship, he would have given her the gift, not the marriage. This conclusion is substantiated by the fact that Husband designated the CD as payable to Wife upon his death. There is no evidence Wife or Husband intended to use the money for their joint benefit. In other words, if anything, Husband intended that Wife have the money as her separate property after his death.

Nevertheless, the burden is on Husband to rebut the presumption of a gift to the marital estate created by the purchase of the CD in both parties' names. It is the opinion of this court that Husband has satisfied that burden. Husband argues that he could not have intended a gift to the marriage because the delivery of a gift could not have been conditioned upon his death. We agree with Husband in part. The "intent" and "delivery" elements of a gift are exclusive. *See Hansel*, 939 S.W.2d at 112. A person can intend to make a gift, but fail to actually make the gift if he or she does not relinquish complete control over the subject of the gift. Thus, Husband could have intended to make a gift to the marriage even if the delivery was incomplete. Despite this flaw in Husband's argument, he must still prevail because the conditional delivery confirms he did not relinquish complete dominion and control. Therefore,

_____

[2] Husband relies on *Thompson v. Thompson*, No. 03A01-9608-PB-00254, 1997 WL 9723 (Tenn. App. 1997) to support her argument. It is the opinion of this court that this case is distinguishable from the present case. The husband in *Thompson* owned a piece of property upon which he had begun to build a house prior to the marriage. After the marriage, the husband executed a deed creating an estate by the entirety between the husband and the wife. *See Thompson*, 1997 WL 9723, at *1. The parties completed the house approximately ten months after getting married. Within a year of moving into the house, the wife filed for divorce. At the hearing, the wife contended the deed constituted a gift to her of one-half interest in the property and the interest was her separate property. The husband countered that the deed had transformed his separate property into marital property. *See id.* at *2-3. The *Thompson* court concluded the language of the deed did nothing other than create an estate by the entirety and affirmed the trial court. *See id.* at *3. The court did not address and the parties did not raise the transmutation issue. The husband in *Thompson*, unlike Husband, was not arguing that the property retained its separate nature. For these reasons the decision in *Thompson* is clearly distinguishable.

the delivery was incomplete.  Moreover, as previously stated, the evidence reveals Husband intended Wife to have the money only after his death from cancer, not before.  He did not <u>intend</u> the parties to use the monies as a marital asset.  Thus, Husband has also rebutted the presumption of a gift to the marital estate by establishing that he did not intend to make a gift, the first formal requirement of a gift.

For the foregoing reasons, it is the opinion of this court that Husband successfully rebutted the presumption that he intended to make a gift to the marriage when he purchased the CD in both parties' names.  It follows that the CD purchased with Husband's separate property remains his separate property.

### 2.    Cattle

The record in this case reveals Husband owned twenty-two head of cattle prior to the marriage and there were twenty-two head of cattle at the time of the divorce.  The record also reveals that these were not the same twenty-two head of cattle as some had been sold and born from the time of the marriage until the divorce.  Wife argues the cattle is marital property because some of the animals are different and because the parties necessarily used marital funds to maintain the cattle.

Wife's argument is without merit.  First, we know Husband came into the marriage with the cattle and the cattle were his separate property.  Thus, the heads of cattle which were not sold or born during the marriage are Husband's separate property.  *See* TENN. CODE ANN. § 36-4-121(b)(2)(A).  The issue then becomes whether any increase in value of these same head of cattle was marital property as a result of each party's substantial contribution to the preservation and appreciation of the cattle.  *See id.* § 36-4-121(b)(1)(B).  Wife asserts in her brief that the upkeep of the cattle necessitated the expenditure of funds.  Wife does not, however, cite any evidence in the record establishing substantial contribution as defined in Tennessee Code Annotated section 36-4-121(b)(1)(C).  Thus, it is the opinion of this court that the cattle which remained in Husband's possession from the time of the marriage until the divorce remain his separate property.

We now turn to the cattle born during the marriage. Wife seems to argue that these cattle are marital property because they were acquired during the marriage. We can not agree. It is the opinion of this court that the more appropriate classification is as an appreciation of separate property. *See id.* § 36-4-121(b)(2)(C). Moreover, because Wife has not established that this appreciation is marital property as a result of substantial contribution, we must conclude that it is Husband's separate property.

Finally, we do not address the issue of whether the income received from the sale of cattle during the marriage is marital or separate property as neither party raised this issue below or on appeal. Therefore, given the above discussion, it is the opinion of this court that the twenty-two head of cattle are Husband's separate property.

### 3. Yamaha Four-Wheeler

The agreed statement of the facts provides as follows with regard to the four-wheeler:

> The parties purchased a Yamaha four-wheeler, which the Husband valued at $3,000.00. The Husband testified that he had traded in a motorcycle he had owned before the marriage. He further testified that he had contributed $2700.00 towards the purchase of the four-wheeler from his VA educational benefits. The four-wheeler was in the possession of the Husband. Neither party specifically asked to be awarded the four-wheeler.

The parties do not contest that the $2,700.00 contributed by Husband was his separate property.

Property acquired with separate property remains separate property. *See id.* § 36-4-121(b)(2)(B). Thus, it is the opinion of this court that $2,700.00 of the four-wheeler's value is Husband's separate property. While there is no evidence in the record regarding the value of the motorcycle traded in, it is reasonable to conclude that the trial court found this to complete the $3,000.00 value of the four-wheeler and awarded it to Husband as separate property.

### B. Equitable Division of Marital Property

A trial court's division of marital property is entitled to great weight on appeal,

and this court will not alter such distribution unless the evidence preponderates against it. *See Barnhill*, 826 S.W.2d at 449-50; *Batson*, 769 S.W.2d at 859. Wife prepared a chart for the purposes of appeal which revealed that the trial court awarded her thirteen percent of the marital property and Husband eighty-seven percent of the marital property. It is her contention that this division is inequitable in light of the factors listed in Tennessee Code Annotated section 36-4-121(c). We can not agree.

This court has held that "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place" when the marriage is of a short duration. *Batson*, 769 S.W.2d at 859. Wife does not the dispute the above holding, but argues this case is distinguishable from *Batson* because the primary marital assets in *Batson* were the increase in the value of separate property. While true, this fact does not relate to the court's above quoted holding. Instead, the fact related to the court's decision that an equal division is not appropriate when the evidence reveals the parties' monetary contributions to the accumulation of marital assets were not equal. *See id.* at 859-60.

Wife also argues she is entitled to more than thirteen percent because her earning capacity is less than Husband's. Again, we can not agree. During the marriage, Husband paid for Wife's real estate training. There is evidence in the record that Wife has obtained her real estate license and has begun to receive commissions from sales. Husband lives off of his retirement income, disability check, and seasonal employment. There is no evidence in the record indicating that Wife is underemployed. It is the opinion of this court that Wife has failed to establish that her earning capacity is less than Husband's.

This was a marriage of short duration. The parties married on December 31, 1992, and Husband filed a complaint for divorce on February 28, 1996. Wife brought little into the marriage and should not be permitted to walk away with a windfall. It is the opinion of this court that the evidence does not preponderate against the determination of the trial court as to equitable division.

II.    **Alimony**

"Appellate courts give wide latitude to trial courts' spousal support and maintenance decisions. These decisions are, however, subject to appellate review." ***Crain v. Crain***, 925 S.W.2d 232, 233 (Tenn. App. 1996) (citations omitted). We review a trial court's decisions regarding spousal support pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure. *See **Jones v. Jones***, 784 S.W.2d 349, 352 (Tenn. App. 1989). Thus, we review findings of fact de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *See* TENN. R. APP. P. 13(d) (1997-98).

The trial court found as follows:

1. Bernice Burns does have an immediate and temporary need for some funds.
2. Franklin Burns is financially capable of making a monthly payment to her.
3. There needs to be a balance of the equities in view of the disproportionate earnings of the parties.
4. A payment of $400.00 per month to Bernice Burns for six months would satisfy these requirements.

We have reviewed the evidence in the record and find that it does not preponderate against the findings of the trial court. Wife argues that she needs more money for a longer period of time and Husband can pay more. Although the evidence does show that Husband could pay more, it does not show that Wife needs more. Of particular interest is the fact that Wife received the 1992 Beretta which was paid for at the time of the divorce, but lists a car payment of $308.53 on her monthly income an expense statement. In addition, Wife claims she needs $360.00 a month for food. The trial court properly refused to award Wife all the money she claimed to need on her monthly income and expense statement. For the foregoing reasons, the decision of the trial court as to spousal support is affirmed.

## III. Conclusion

It is the opinion of this court that the CD, cattle, and the Yamaha four-wheeler are Husband's separate property. Wife is entitled to thirteen percent of the marital property, and Husband is entitled to eighty-seven percent of the marital property. Finally, the trial court's award of spousal support is proper.

Therefore it follows that the decision of the trial court is affirmed. On remand, the trial court shall enter an order in accordance with the above decision. Costs of appeal are taxed against respondent/appellant, Bernice A. Burns.

_____
Walter W. Bussart, Judge

Concur:

_____
Ben H. Cantrell, Judge


_____
William C. Koch, Jr., Judge