IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# KAREN LYNN (GRAVES) MILLER v. ROBERT LARUE MILLER

**An Appeal from the Circuit Court for Sumner County**
**No. 18709-C;  The Honorable Thomas Goodall, Judge**

_____

**No. M1999-00226-COA-R3-CV - Decided May 5, 2000**

_____

Robert Miller appeals from a final decree of divorce entered in the Circuit Court of Sumner County. For the reasons stated herein, we remand the case for further proceedings on the issues related to child support.  In all other respects, we affirm the trial court decision.

**Tenn.R.App. 3; Appeal as of right; Judgment of the Circuit Court is Affirmed in Part and Remanded**

HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and LILLARD, J., joined.

Randle W. Hill, Jr., Nashville, for Appellant, Robert Larue Miller

Michael W. Edwards, Hendersonville, for Appellee, Karen Lynn (Graves) Miller

**OPINION**

Facts and Procedural History

Karen Lynn (Graves) Miller, the appellee, filed a Complaint for Absolute Divorce on September 21, 1998 alleging as grounds inappropriate marital conduct and irreconcilable differences. The complaint sought rehabilitative spousal support, an equitable division of the marital assets and debts, and attorney's fees and court costs.   At the time of filing, the parties had two minor children and the complaint asked the court to determine the best interests of the children in awarding custody and support.[1]

Robert Larue Miller, the appellant, filed an Answer and Counter-complaint in which he denied the allegations contained in the original complaint and asked for a divorce on the same

_____

[1] The oldest child turned eighteen years of age on May 11, 1999.  The youngest child will graduate from high school in May of the present year and turn eighteen on June 5, 2000.

grounds alleged by Ms. Miller. Mr. Miller sought custody of the minor children, as well as child support from Ms. Miller.

Both parties filed trial memoranda containing lists of separate and marital property and valuations thereof, a proposed property division, and income and expense statements. The trial court held a hearing on March 17, 1999. On April 13, 1999, the court entered the Final Decree of Divorce in which the parties were declared divorced pursuant to T.C.A. § 36-4-129. The court granted the parties joint custody of the minor children with primary physical custody to be with Mr. Miller. The court ordered Ms. Miller to pay child support for the youngest child in the amount of four hundred and twelve dollars ($412.00) per month. However, the court made no provisions in regard to the older child.

The court found that Mr. Miller earned a base pay of forty-four thousand dollars ($44,000.00) per year plus Veteran's benefits in the amount of one thousand two hundred and fifty-three dollars ($1,253.00) per month.[2] The court determined Ms. Miller's income to be thirty-two thousand dollars ($32,000.00) per year. Based on its findings, the trial court awarded Ms. Miller rehabilitative alimony of five hundred dollars ($500.00) per month for a period of thirty-six (36) months.[3]

After dividing the marital property, the trial court determined that Mr. Miller was receiving more marital property than Ms. Miller. In order to make the division "more equitable," the court ordered Mr. Miller to pay to Ms. Miller two hundred dollars ($200.00) per month for a period of thirty-six (36) months. This produced a total settlement of seventy-four thousand nine hundred and fifty-seven dollars ($74,957.00) for Mr. Miller and sixty-three thousand four hundred and two dollars ($63,402.00) for Ms. Miller. The court also ordered the parties to pay one-half of a ten thousand dollar ($10,000.00) school loan incurred during the marriage by Ms. Miller.

Mr. Miller filed the present appeal contesting several provisions of the final divorce decree. The issues presented for our review are: 1) whether the trial court erred in the award of rehabilitative alimony, 2) whether the trial court erred in the child support payments imposed on Ms. Miller, 3) whether the trial court erred in ordering Mr. Miller to pay one-half of Ms. Miller's student loan obligation, and 4) whether the trial court erred in the distribution of the marital property.

**Law and Analysis**

[2] The Veterans benefits will continue for the remainder of Mr. Miller's life. However, at the time of the hearing, Mr. Miller was also receiving workers compensation benefits in the amount of two thousand five hundred and sixteen dollars ($2,516.00) per month. According to the record, those benefits ceased in August of 1999.

[3] As a result of the support payments owed by each party, the court ordered Mr. Miller to pay Ms. Miller eighty-eight dollars ($88.00) per month until the parties youngest child reached eighteen (18) years of age, at which time Mr. Miller would be required to pay the full amount of alimony.

I. Alimony

In his first issue, Mr. Miller objects to the trial court's award of rehabilitative alimony. In this regard, Mr. Miller advances two arguments. First, he contends that the trial court erred in awarding any alimony. He argues that the relative economic positions of the parties did not support the alimony award. In the alternative, Mr. Miller argues that the trial court erred in the duration of the award. He contends that since Ms. Miller only requested twenty-four (24) months of alimony, the trial court erred by awarding her twelve (12) months of additional alimony, or $6,000 more than was needed. We shall address each of these arguments in turn.

There are no hard and fast rules for spousal support decisions. See Crain v. Crain, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); Stone v. Stone, 409 S.W.2d 388, 392-93 (1966). Trial courts are vested with broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. See Garfinkel v. Garfinkel, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); Jones v. Jones, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). It is a well-recognized proposition that appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. See Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in T.C.A. § 36-5-101(d)(1) (Supp.1997). See Hawkins v. Hawkins, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); Loyd v. Loyd, 860 S.W.2d 409, 412 (Tenn. Ct. App.1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. See Varley v. Varley, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); Crain, 925 S.W.2d at 234.

We recognize that there are some minor disagreements between the parties regarding income and expenses. Specifically, Mr. Miller argues that the worker's compensation award which he was receiving should not have been used for calculating his income because that award expired in August of 1999. Also, he contends that Ms. Miller has understated her income by failing to include money she received from part-time jobs. Neither of these contentions lead us to conclude that the trial court erred in the alimony award. Even without considering the money received from the worker's compensation award, Mr. Miller earns nearly $60,000 per year. Additionally, we do not find it relevant that Ms. Miller had, in the past, engaged in part-time employment in order to supplement her income. If, in the future, Ms. Miller's income changes from the $32,000 figure employed by the trial court, Mr. Miller is free to take appropriate steps in order to address such a situation.

Based on the relative economic positions of the parties, we do not believe the trial court erred in awarding rehabilitative alimony to Ms. Miller. Certainly, taking away the income of Mr. Miller will create the need for Ms. Miller to become more self-sufficient and adjust her standard of living. The award will provide her the economic stability to make those adjustments. Our review of the record provides us with no basis for disturbing the trial court's decision that alimony was warranted.

Mr. Miller also contends that the trial court erred in awarding thirty-six months of

rehabilitative alimony when Ms. Miller had only asked for twenty-four months of support. However, as Ms. Miller succinctly states in her brief, the opinion of the spouse seeking the rehabilitative alimony is not a factor in the trial court's decision. Just as the trial court would have been free to award **less** alimony than requested, the court is also free to award more. The applicable statute, T.C.A. § 36-5-101, provides the relevant factors. Absent some showing that the trial court failed to consider the factors contained in the statute, we uphold the decision.

## II. Child Support

As part of the final divorce decree, the trial court ordered Ms. Miller to pay $412.00 per month as child support for the youngest child. The court did not order any child support for the oldest child even though, at the time of the hearing, that child was seventeen years old and still in high school. Mr. Miller objects to both the amount of child support ordered for the youngest child, and the trial court's failure to award child support for the parties' oldest child. We will consider each of these contentions separately.

In the present case, the trial court determined Ms. Miller's income and purported to fix her child support obligation consistent with the Tennessee Child Support Guidelines ("Guidelines"). Once the parent's income has been determined, the guidelines require the courts to calculate the required amount of support using the percentages provided in the guidelines. See Tenn.Comp.R. & Regs. r. 1240-2-4-.03(5). We will not engage in an analysis of whether the trial court set the correct amount because Ms. Miller, in her brief, concedes that a "strict" application of the Guidelines would have produced a support obligation of $446.00. This creates a $34 per month discrepancy between the amount the court actually ordered and the correct amount as determined by the Guidelines.

A trial court has authority to deviate from the Guidelines but only if an appropriate reason for doing so is **expressly** stated on the record. See T.C.A. § 36-5-101(e)(1) ; Jahn v. Jahn, 932 S.W.2d 939, 943 (Tenn. App. 1996)(emphasis added). In the present case, Ms. Miller admits that the court deviated from the Guidelines, but she contends that the court was justified in doing so due to the relative economic positions of the parties. We do not doubt the validity of the argument which Ms. Miller proposes. In this case, the argument could certainly be made that the amount of the deviation is small and the reasons for that deviation apparent. However, we must consider the effect on subsequent cases. As such, we are remanding the case to the trial court for clarification of its position on the present issue. The court may either amend the award to reflect the correct amount under the Guidelines or the court may make written findings which detail its reasons for deviation. We feel that consistency in the application of the Guidelines mandates this decision.

In regards to the oldest child, the trial court, inexplicably, failed to award child support even though the child was still in high school and under the age of eighteen. Mr. Miller cites to T.C.A. § 34-11-102(b) for the proposition that Ms. Miller had a duty to support her child until he reached the age of eighteen, or until he graduated from high school.[4] It is undisputed that neither of these

---

[4] That section states:

circumstances had taken place at the time of the hearing or the final divorce decree. We recognize that there was only a short interval of time before the child reached the age of eighteen. However, we feel that this situation could create a slippery slope for trial courts. Parents are responsible for their children until a certain point, not sometime close to that certain point. As such, we find no basis for the trial court's refusal to award Mr. Miller child support for the oldest child, notwithstanding the fact that this child was near the age of eighteen. Therefore, we remand this issue to the trial court for calculation of the amount of child support owed by Ms. Miller for the parties' oldest child, said amount being determined through application of the Tennessee Child Support Guidelines.

### III. Ms. Miller's Student Loan

In his third issue, Mr. Miller objects to the trial court decision which ordered him to pay one-half of his former wife's student loans which were incurred for the purpose of allowing Ms. Miller to attend court reporting school. His argument in this regard is that the debt is separate because she quit the course before completion and the family never received any benefit from the schooling. Ms. Miller, on the other hand, points out that the debt was incurred during the marriage, Mr. Miller never objected to her attending school, and he never objected to her taking out the loan to pay for her schooling.

Marital debts are those debts incurred during the marriage for the joint benefit of the parties. Mondelli v. Howard, 780 S,W,2d 769 (Tenn. Ct. App. 1989). Marital debts should, where possible, follow their associated assets, Mondelli, 780 S.W.2d at 773, and should be apportioned by considering the reason for the debt, the party who benefitted from the debt, and the party better able to assume the debt. Mahaffey v. Mahaffey, 775 S.W.2d 618, 624 (Tenn. Ct. App. 1989). In consideration of these factors, we find no reason to disturb the trial court's ruling. The debt was incurred for the benefit of both parties. The fact that neither party actually realized the benefit does not change that fact. The only logical conclusion is that Ms. Miller attended court reporting school for the purpose of improving her earning capacity, which would, in turn, benefit the family. This conclusion is supported by the fact Mr. Miller consented to her attendance and the debt that resulted. We are also persuaded by the fact that Mr. Miller is in a financial position which will allow him to assume part of the debt. In short, all the relevant considerations support the trial court's decision in regard to this issue. We find no error of law or misapplication of the statutory factors which would necessitate our reversal of the trial court. See Herrera v. Herrera, 944 S.W.2d 379 (Tenn. Ct. App. 1996); Tenn. Code Ann. § 36-4-121.

---

(b) Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first.

5

IV. Division of Marital Property

　　　　　The final issue presented by the Appellant pertains to the division of the marital property. His main contention in this regard is that the court erred in classifying a Corvette and a 1995 Grand Am automobile as marital property. Mr. Miller argues that these automobiles were purchased with funds from his OWCP (worker's compensation) payments from the Post Office.

　　　　The essence of the present argument advanced by the Appellant is that the OWCP funds were separate property and the automobiles purchased with those funds retained the character of separate property. The question of whether the funds were, in fact, separate property appears to be an open question in this state. However, we are able to resolve this issue without addressing that particular issue. The trial court's division of the marital property, including the two automobiles, produced a total of $74,957.00 for Mr. Miller and $56,202.00 for Ms. Miller. The Corvette was valued at $23,000 and was given to Mr. Miller. The Grand Am automobile was valued at $7,500 and was given to Ms. Miller. Recognizing the discrepancy in the amount of property awarded to each party, the trial court ordered Mr. Miller to pay an additional $7,200.00 to Ms. Miller in order to provide for a more equitable distribution. Thus, Mr. Miller received $11,555.00 more than did Ms. Miller in the property settlement. Even if we were to assume that the Corvette should be considered as Mr. Miller's separate property, he would still be receiving $51,957 as his share of the marital property.[5] In that event, Ms. Miller would be receiving $11,445.00 more than Mr. Miller. Therefore, no matter how the Corvette is classified, the division of the marital property remains equitable.

　　　　The division of the estate is not rendered inequitable simply because it is not mathematically equal. Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn. 1996); Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn. 1988). Mr. Miller cannot seriously contend that the division of marital property would be equitable when he receives approximately $11,000 more than does Ms. Miller, yet somehow be inequitable when she receives the same amount more than does he. Regardless of how we choose to classify the Corvette, the end result remains the same. The trial court's division of the marital property was equitable and will not be disturbed by this court.

## Conclusion

　　　　For the foregoing reasons, we remand the case for further proceedings on the issues relating to child support. In all other respects, we affirm the trial court ruling. Costs of this appeal are taxed against the appellant, Robert Miller, for which execution may issue if necessary.

---

[5] Mr. Miller agreed to let Ms. Miller have the 1995 Grand Am. Therefore, we consider this issue to focus solely on the Corvette.