# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JOYCE CHARLENE PRESTON,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Sumner Chancery No. 96D-282 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 01A01-9806-CH-00289 |
| **JAMES THURSTON PRESTON,** | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

**August 12, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE TOM E. GRAY, CHANCELLOR

For the Plaintiff/ Appellee:

John M. Cannon
Goodlettsville, Tennessee

For the Defendant/Appellant:

F. Dulin Kelly
Clinton L. Kelly
Andy L. Allman
Hendersonville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a divorce case. The parties signed a prenuptial agreement prior to their marriage. The wife became disabled after the parties had been married approximately eight months, and the parties separated. The trial court held the prenuptial agreement invalid and awarded alimony *in futuro*. The husband appeals. We affirm.

Defendant/Appellant James Thurston Preston ("Husband") owned the GooseCreek Inn in Franklin, Tennessee. Plaintiff/Appellee, Joyce Charlene Preston ("Wife") worked as a desk clerk at the Inn. After a relationship of approximately seven years, the parties married in October, 1995. It is undisputed that, for many years prior to the marriage, Wife had episodes of alcohol abuse. Husband asserts that, prior to their marriage, Wife promised to stop drinking.

On the day of their marriage, Husband presented Wife with a prenuptial agreement, which she signed. At the time of their marriage, Wife was 54 years old, and Husband was 65 years old. During the marriage, Wife did not work outside the home.

The parties had a short and tumultuous marriage. Each accused the other of verbal and physical abuse. Husband contended that after their marriage Wife again began drinking too much. Wife accused Husband of constantly criticizing her cooking and housekeeping; Husband said that Wife didn't cook or clean. Wife accused Husband of physically abusing her by shoving her into a closet and injuring her neck.

In June, 1996, approximately eight months after the parties' marriage, Wife suffered a cerebral stroke. The parties dispute Husband's reaction to the stroke. Wife asserts that, when she suffered the stroke, Husband "hollered" at her, kicked her, accused her of faking her condition, refused to seek medical attention for her, and left her to have lunch with his former mother-in-law and his son. Husband denied this behavior. He said that he was supportive of her and offered several times to take her to the hospital, which Wife refused. He said Wife began verbally abusing him, so he left to have lunch with his former mother-in-law and his son.

Wife was admitted to the hospital for the stroke. It is undisputed that Husband did not come to the hospital to see her for several days. Husband said that Wife told him not to come to the hospital. Regardless, after several days, Husband came to the hospital to see Wife. Wife asserts that Husband started an argument with her in her hospital room and that a nurse made Husband leave. Husband said that when he visited Wife in the hospital, she began yelling at him and asked a nurse

to make him leave. It is undisputed that, when Wife was discharged from the hospital, she stayed with her mother, and the parties did not thereafter live together.

After the stroke, Wife was permanently disabled. It is undisputed that she is unable to drive, to read, or to work. Her condition is permanent.

On July 16, 1996, Wife filed for divorce. Husband filed an answer and counterclaimed for divorce. Pending trial, Husband was ordered to pay Wife $1,750 per month in support, as well as other expenses. The trial court appointed a guardian ad litem for Wife to determine her ability to testify. The guardian ad litem concluded that Wife could testify but might become emotional.

In the hearing in this cause, the trial court heard lengthy testimony from both parties, as well as several other witnesses. In the hearing, Wife contended that she signed the prenuptial agreement under duress and that there was not a full and fair disclosure of Husband's assets prior to execution of the agreement. Husband contended that the prenuptial agreement signed by the parties included an attachment listing his assets. Husband said that the attachment could not be located after the parties' marriage. Husband asserted that Wife was knowledgeable about his financial assets because, at times prior to their marriage, she worked for Husband's business as an accountant and bookkeeper. The trial court heard detailed testimony regarding the parties' financial issues and the parties' proposed property division.

Husband testified that his income from all sources is approximately $20,600 per month, or over $240,000 per year. After the parties separated, Wife began drawing Social Security disability benefits of $530 per month. She received a lump sum Social Security payment of approximately $2,000 as well. Both parties submitted detailed proposals for dividing the personal property.

The trial court considered the deposition of a neurologist, Mary Ellen Clinton, M.D., who conducted an independent medical examination of Wife. Dr. Clinton testified that the stroke had left Wife with significant visual impairment as well as depression and other physical problems. Dr. Clinton believed that Wife exaggerated her problems and described having to "devise techniques to distract" Wife in order to evaluate how much she could see. Dr. Clinton felt that Wife could see well enough to take care of her personal needs. However, she believed that she would have substantial difficulty reading, and said that she is unable to drive and unable to be gainfully employed. Dr. Clinton confirmed that Wife's condition is permanent.

2

After considering the testimony and other evidence, the trial court issued a written order with a memorandum detailing its factual findings. It found that Wife did not sign the prenuptial agreement under duress, but found that Husband had not proven that Wife was fully knowledgeable about the value of his assets or that he had made full disclosure prior to execution of the agreement. Consequently, the trial court held the prenuptial agreement invalid and unenforceable.

The trial court found that Wife was not a credible witness. It noted that it did not accept all of Husband's testimony, but found him "more credible than his wife." The trial judge generally credited Husband's version of the events surrounding Wife's stroke and subsequent hospitalization.

The trial court noted Dr. Clinton's testimony that Wife exaggerated her condition, but concluded, as did Dr. Clinton, that Wife can no longer drive and "cannot be gainfully employed."

The trial court found both parties at fault for the demise of the marriage. It detailed the division of the parties' personal property and real property.

The trial court found that Wife used her physical disability to avoid cooperating with discovery. It noted that Wife had not presented evidence of how she spent the spousal support from Husband and the Social Security disability income, and inferred that Wife "was hiding matters about her economics."

Nevertheless, on Wife's request for alimony, the trial court found:

> Joyce Charlene Preston has a need for support. James Thurston Preston has the ability to pay. Mrs. Preston is entitled to alimony in futuro. She is no longer able to work outside the home. The Social Security Disability she is receiving is not sufficient to meet her monthly expenses.

The trial court found that Wife needed $2,080 per month to meet her monthly expenses. It awarded her $1,550 per month in alimony *in futuro*.

Husband had asserted that Wife did not disclose to him the $11,600 she received in Social Security disability income during the pendency of the proceedings and sought to recoup these monies. The trial court found this request justified, and held:

> In consideration of the $11,600.00 Social Security Disability received in addition to payments by James Thurston Preston of $1,750.00 spousal support, the payment of the mortgage on the marital residence, the payment of the mortgage on the condominium, the minimum monthly payment on her MasterCard through Chevy Chase Bank, and the payment of her health insurance, the Court awards no alimony in gross for attorney fees.

From this order, Husband now appeals.

3

On appeal Husband asserts that the trial court erred in holding the prenuptial agreement invalid, and in awarding alimony to Wife. Husband also contends that the trial court awarded Wife $11,600 in attorney's fees and asserts that this was an error.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d).

Husband argues first that the evidence preponderates against the trial court's finding that Wife was not sufficiently knowledgeable about Husband's financial assets and that Husband did not make full and fair disclosure of his assets prior to execution of the prenuptial agreement. He contends that the prenuptial agreement should be deemed valid and should be enforced.

Tennessee Code Annotated § 36-3-501 provides:

> [A]ny antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. . . .

Tennessee Code Annotated § 36-3-501 (1996). The "knowledge" component of the statute has been interpreted to mean:

> [t]hat the spouse seeking to enforce an antenuptial agreement must prove, by a preponderance of the evidence, either that a full and fair disclosure of the nature, extent and value of his or her holdings was provided to the spouse seeking to avoid the agreement, or that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the proponent spouse's holdings.

*Randolph v. Randolph*, 937 S.W.2d 815, 817 (Tenn. 1996). Thus, Husband in this case had the burden of proving that full disclosure was made, or in the alternative, that Wife had sufficient prior knowledge of his assets.

Husband in this case maintained that a schedule of his assets was attached to the prenuptial agreement when Wife signed it. However, a copy of the schedule could not be produced at trial, and Wife disputed its existence. In the alternative, Husband contended that Wife had full knowledge of his financial assets prior to execution of the agreement through her employment with him. Wife acknowledged doing some bookkeeping for one of Husband's businesses but denied having knowledge of his other businesses or knowledge of his personal assets.

4

Although the trial court generally concluded that Wife was not a credible witness and found that Husband was "more credible than his wife," the trial court noted that it did not accept all of Husband's testimony. With regard to the prenuptial agreement, the trial court found that Husband had not proven that Wife was fully knowledgeable about his assets or that full disclosure was made. On this issue, then, the trial court implicitly credited Wife's testimony. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Considering the trial court's implicit determination of the parties' credibility on this issue, the evidence does not preponderate against the trial court's conclusion that the "knowledge" component of the statute was not met and that the prenuptial agreement was therefore invalid and unenforceable. The decision of the trial court is affirmed on this issue.

Husband next argues that the trial court erred in awarding alimony *in futuro*. He stresses the short duration of the parties' marriage, noting that they cohabited for only eight months prior to Wife's stroke, and the parties' ensuing separation. Husband points to testimony from Dr. Clinton indicating that past alcohol abuse can contribute to the cause of a stroke and argues that there is no evidence that Wife's stroke result from anything that transpired during the marriage.

In response, Wife emphasizes Husband's income of over $240,000 per year, as well as the unequivocal testimony of Dr. Clinton that Wife is unable to drive and unable to work, and that her disability is permanent. Wife points to the trial court's finding that Wife has a great need for alimony and that Husband unquestionably has the ability to pay.

The determination of the amount of alimony in a given case is in the discretion of the trial court. *Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn. App. 1996) (citing *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. App 1986)). On appeal, "wide latitude" is given to the trial court's decisions on spousal support. *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. App. 1996). It has long been recognized that the two most important factors in determining an award of alimony are "the real need

of the spouse seeking the support" and "the ability of the obligor spouse to provide support." ***Ford***, 952 S.W.2d at 827. The short duration of the marriage is a factor to consider. ***Crain***, 925 S.W.2d at 234. However, it is not determinative. An additional consideration is whether the spouse seeking support would become a public charge in the absence of spousal support. Indeed, this is so disfavored that an otherwise enforceable antenuptial agreement is void and unenforceable if enforcing the contractual prohibition against alimony would result in the spouse being "rendered a public charge. . . ." ***Cary v. Cary***, 937 S.W.2d 777, 782 (Tenn 1996).

In this case, there is no solution that is completely equitable to both parties. Clearly this is a marriage of exceptionally short duration. However, Wife's need for alimony is great, and Husband's ability to pay is clear. Wife has no source of income except Social Security and spousal support from Husband. Under these circumstances, we cannot conclude that the trial court abused its discretion in awarding alimony *in futuro.* Obviously the alimony award may be subject to future modification if Wife becomes eligible for additional income, such as additional Social Security benefits. The decision of the trial court is affirmed on this issue.

Husband argues on appeal that the trial court awarded Wife $11,600 in attorney's fees as alimony *in gross.* In its final order, the trial court stated:

> James Thurston Preston filed on the 22nd day of December, 1997 a <u>Motion for Credit of Extra Income Received by Plaintiff</u> moving the Court that he be given a credit for the $11,600.00 of undisclosed income received by the plaintiff against the division of marital assets or any order of support that this Court may enter. The Court finds the motion well-taken.
>
> * * *
>
> In consideration of the $11,600.00 Social Security Disability received in addition to payments by James Thurston Preston of $1,750.00 spousal support, the payment of the mortgage on the martial residence, the payment of the mortgage on the condominium, the minimum monthly payment on her MasterCard through Chevy Chase Bank, and the payment of her health insurance, the Court awards no alimony in gross for attorney fees.

We must conclude from the Order that the trial court, in its discretion, declined to award attorney's fees to Wife in light of the undisclosed income, as well as other factors. The evidence does not preponderate against the trial court's decision on this issue.

The decision of the trial court is affirmed.  Costs are assessed against the Appellant, for which execution may issue if necessary.


                                                   **HOLLY KIRBY LILLARD, J.**

**CONCUR:**


**W. FRANK CRAWFORD, P. J., W.S.**


**DAVID R. FARMER, J.**