# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 10, 2003 Session

## BRENDA WATSON BUCHANAN v. BERKLEY OTTIE BUCHANAN

**Appeal from the Circuit Court for Knox County**
**No. 86076    James L. Weatherford, Senior Judge**

**FILED FEBRUARY 25, 2003**

**No. E2002-00915-COA-R3-CV**

---

This is a divorce case. Both parties sought a divorce. Brenda Watson Buchanan ("Wife") was granted an absolute divorce from Berkley Ottie Buchanan ("Husband") on the ground of inappropriate marital conduct. In its judgment, the trial court decreed, among other things, that Wife was to be paid alimony in the amount of $750 per month for 24 months; costs of $579.70; and attorney's fees of $1,850. Husband appeals contending that the trial court erred in making all of these decrees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ, joined.

John E. Eldridge and Robert R. Kurtz, Knoxville, Tennessee, for the appellant, Berkley Ottie Buchanan.

Dennis B. Francis, Knoxville, Tennessee, for the appellee, Brenda Watson Buchanan.

### OPINION

#### I.

The parties stipulated the facts before the trial court:[1]

---

[1]The briefs reflect, and counsel stated at oral argument, that the court reporter who transcribed the testimony at the trial had moved out of the jurisdiction and, despite their best efforts, they had been unable to obtain a verbatim transcript of the proceedings. This dilemma prompted the parties to stipulate the proof before the trial court.

The husband was born in 1936, was sixty-two (62) years of age at the time of the marriage, and sixty-four (64) years of age at the time of the divorce.

The wife was born in 1956, was forty-two (42) years of age at the time of the marriage, and forty-four (44) years of age at the time of the divorce.

The parties married on January 2, 1999, separated for the last time on August 7, 2000, and the divorce trial was on September 28, 2001.

At the time of the marriage, the husband was employed as a consultant engineer for Enertech in Waterford, Connecticut. He had begun this job as a consultant engineer in November 1998, and it paid him $800.00 per week per diem (living expenses), $42.00 per hour (no benefits), and it lasted until July 28, 2000. The husband had already retired from TVA in September 1990, and drew a retirement from TVA in the amount of $35,000.00 per year. At the time of the trial, the husband had been unemployed for more than a year, but was looking for another position as a consultant engineer.

At the time of the marriage, the wife was unemployed, having left her employment at Taylor White in Knoxville, Tennessee, voluntarily, to join her husband in Connecticut. Her employment at Taylor White brought an annual salary, plus bonus, to her in the amount of $32,000.00. She remained unemployed during the course of the marriage, until after separation. At the time of the trial, she was employed at Alston Power and had an annual salary of $27,000.00.

The husband's major assets at the time of the marriage included $20,000.00 in checking and savings accounts, $80,000.00 in a 401(K) account, a 1991 Nissan Maxima vehicle valued at $8,000.00, and a retirement income from TVA in the amount of $35,000.00 per year.

The husband's major assets at the time of divorce included $18,000.00 in savings and checking accounts, $70,000.00 in a 401(K) account, a 1997 Acura vehicle valued at $20,000.00, a retirement income from TVA in the amount of $35,000.00 per year, and Social Security income in the approximate amount of $16,800.00 per year ($1,400.00 per month).

The wife's major assets at the time of the marriage included $65,000.00 equity in her residence and $5,000.00 in her vehicle (a 1992 Toyota Camry).

The wife's major assets at the time of divorce included $32,000.00 remaining from the sale of her residence and a 1992 Toyota Camry valued at approximately $5,000.00.

At the time of the marriage, the wife had a $60,000.00 second mortgage on her residence to a friend. Once the friend learned of her marriage to the husband, he called the loan and the husband and wife together had to take out a second mortgage on the wife's house. The husband put $20,000.00 of his own money into the wife's house, but after the wife's house sold and before trial, the $20,000.00, plus another $13,000.00 in house payments, pending the sale, was repaid to the husband and was, therefore, not an issue at trial. The wife's house sold for $235,000.00, in June 2000, and after all costs, including payment to the husband as indicated, the wife received $37,000.00.

During the months of marriage the parties lived in Connecticut (January 1999 to March 2000), the husband's income was their sole income. During this time, in addition to shouldering the normal expenses of the couple, the husband paid for several trips, including airfare back and forth to Knoxville on several occasions to visit both families; financial support of his children; $2,000.00 to refinish the wife's piano; $4000.00 toward the wife's daughter's college expenses; and $1,200.00 to pay off the wife's loan on her vehicle. From January 1999 (the inception of the marriage) until the wife's house sold in June of 2000, the husband paid the mortgages (first and second) on the wife's house in the approximate amount of $1,500.00 per month, and pursuant to an Agreed Order the husband was reimbursed for some of those mortgage payments at the time of the sale of the house. . . . Finally the husband paid the wife's and her daughter's health insurance premiums in the amount of $400.00 per month, before and after the separation, until the divorce was final.

(Numbering of paragraphs omitted). In addition to the parties' stipulation, we have a 243-page transcript of conversations between the parties that were recorded by Wife without Husband's knowledge.

II.

Our review is *de novo*. Tenn. R. App. P. 13(d). There are no findings of fact in the record before us to which the Rule 13(d) presumption of correctness can attach. "We therefore must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

III.

A trial court has broad discretion in determining whether and to what extent an award of alimony is appropriate. *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2002); *see also Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In making an alimony determination, a court should be guided by Tenn. Code Ann. § 36-5-101, particularly the provisions of subsections (d)(1)(A)-(L). The "real need" of the requesting spouse "is the single most important factor." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Id*.

An award of attorney's fees is in the nature of alimony. *Raskind v. Raskind*, 325 S.W.2d 617, 623 (Tenn. Ct. App. 1959). Accordingly, such an award is also within the sound discretion of the trial court. *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964).

We review alimony decisions under an abuse of discretion standard. *Wilder v. Wilder*, 66 S.W.3d 892, 894-95 (Tenn. Ct. App. 2001).

The costs of the clerk of the trial court "shall be allowed to the prevailing party unless the court otherwise directs." Tenn. R. Civ. P. 54.04(1). Certain other costs enumerated in Rule 54.04 – appropriately referred to as "discretionary costs" – "are allowable only in the court's discretion." Tenn. R. Civ. P. 54.04(2). An award of discretionary costs is reviewed by us under an abuse of discretion standard.

IV.

Husband contends that the parties were married for a relatively short period of time. Their date of marriage is January 2, 1999. They separated around August 7, 2000, some 19 months later. The judgment of divorce was entered November 20, 2001. Given the short duration of this marriage, "the justification for spousal support is diminished when the spouse seeking support has contributed little, directly or indirectly, to the marriage." *Crain v. Crain*, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996).

We agree with Husband that this case deals with a very short marriage. While the "justification for spousal support is diminished" in such a case, *id*., this is not to say that no alimony is appropriate. In the instant case, the trial court awarded alimony *in solido* of $18,000, to be paid in equal installments of $750 per month over 24 months. Such an award will assist Wife in moving

from a married state, living with a husband with significant income, to a single state making $27,000 per year, some $5,000 less than she was making at the time of her marriage. She gave up her job in Knoxville when the parties married in order to join Husband in Connecticut where he was working as a consulting engineer. As her counsel points out, Wife lost out on Social Security contributions during her marriage to Husband.

Wife's affidavit reflects anticipated expenses of $3,530. The evidence preponderates that Wife is in need of temporary support; it is undisputed that Husband has the ability to pay the alimony *in solido* ordered by the trial court. We find no abuse of discretion in this award.

Wife was granted the divorce. She was the prevailing party. As such she was entitled to the clerk's costs of $141.50 under Tenn. R. Civ. P. 54.04(1).

The trial court also awarded Wife half of her counsel's fees and discretionary costs of $438.20. We find no abuse of discretion in either award.

In our judgment, the evidence preponderates in favor of the trial court's judgment in this case.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Berkley Ottie Buchanan. This case is remanded to the trial court for enforcement of the lower court's judgment and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE