IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 1998 Session

## TOMMY LOUIS HUNT v. LOIS J. HUNT

**Appeal from the Chancery Court for Sumner County**
**No. 96D-500      Thomas E. Gray, Chancellor**

---

**No. M1997-00221-COA-R3-CV - Filed July 27, 2000**

---

This appeal involves the financial aspects of a divorce that ended a seventeen-year marriage. Both parties sought a divorce, and following a bench trial, the Chancery Court for Sumner County granted the wife a divorce based on the husband's inappropriate marital conduct. The trial court awarded the wife most of the marital estate, apart from the parties' pensions. The court also directed the husband to pay most of the marital debt and a portion of the wife's legal expenses. While the trial court did not require the husband to pay long-term alimony, it required him to pay $4,200 in alimony in solido. The wife asserts on this appeal that the trial court should have awarded her a greater portion of the marital estate and permanent spousal support. We have determined that the trial court's distribution of the marital estate is essentially equitable. However, in light of the length of the marriage and the disparity in income, we have determined that, in addition to the alimony in solido, the husband should pay the wife $120 per month beginning after his last alimony in solido payment through January 2007.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Modified in Part**

WILLIAM C. KOCH, Jr., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and WILLIAM B. CAIN, J., joined.

David H. Hornik, Nashville, Tennessee, for the appellant, Lois J. Hunt.

James M. Hunter, Jr., Gallatin, Tennessee, for the appellee, Tommy Louis Hunt.

### OPINION

Tommy L. Hunt and Lois J. Hunt were married in August 1980. Mr. Hunt was then thirty-seven years old. He had been married twice before and had three sons from his previous marriages. Ms. Hunt was thirty-eight years old and had been married once before. She had a mentally disabled daughter who continued to live with her during and after the marriage. The parties had no children together. Mr. Hunt was employed at DuPont; while Ms. Hunt was employed at Oscar Mayer Foods Corporation.

Following the marriage, Mr. Hunt moved into a house on Robin Hood Circle in Hendersonville that Ms. Hunt had purchased in 1977. The record, such as it is, provides little information regarding the parties or their marriage between 1980 and their separation in September 1996.[1] Apparently, Ms. Hunt's daughter continued to live with the parties. Mr. Hunt continued working for DuPont, but Ms. Hunt's job at Oscar Mayer ended in 1992 when the plant closed. However, in 1993 Ms. Hunt received $11,371 as a lump sum settlement of a workers' compensation claim against Oscar Mayer and also began receiving approximately $750 per month in Social Security disability benefits. The record does not disclose the nature of the disability or its effect on her employability.[2]

The record provides an indistinct picture of the deterioration of the parties' relationship.[3] Ms. Hunt asserted that Mr. Hunt began losing interest in her in the early 1990's and insinuated that he was having some sort of inappropriate relationship with another woman. For his part, Mr. Hunt complained of Ms. Hunt's slovenly housekeeping, her hoarding of useless objects, and her propensity for making impulse purchases. Mr. Hunt eventually left the marital home in September 1996 and filed for divorce in the Chancery Court for Sumner County three months later. Ms. Hunt counterclaimed for divorce.

The trial court heard the evidence on May 14, 1997, and filed its memorandum and final decree on May 21, 1997. The court first identified and awarded the parties their separate property.[4] Then the court divided the parties' marital estate, valued at approximately $200,500 excluding the portions of their pensions earned during the marriage, by awarding Ms. Hunt property valued at $123,700 (60%) and Mr. Hunt property valued at $81,800 (40%). Turning to the parties' debts of $67,500, the trial court required Mr. Hunt to assume $49,500 (73%) of the debts and required Ms.

---

[1] The record contains a statement of the evidence and a copy of the trial court's notes in lieu of a verbatim transcript of the divorce hearing. When the parties could not agree on a statement of the evidence, the trial court was forced to prepare one itself. Despite the trial court's best efforts, this record again demonstrates that, as a practical matter, statements of the evidence are poor substitutes for verbatim transcripts.

[2] The only evidence in the record concerning Ms. Hunt's ability to work is that she does "what is necessary."

[3] The absence of an adequate record does not have much direct impact on this point because Mr. Hunt is not contesting the trial court's decision to award Ms. Hunt a divorce on the grounds of inappropriate marital conduct. However, the lack of evidence regarding the parties' conduct during the marriage has made it virtually impossible for this court to consider or apply the "fault" ground, Tenn. Code Ann. § 36-5-101(d)(1)(K) (Supp. 1999), with reference to Ms. Hunt's demand for spousal support.

[4] In addition to their personal belongings, jewelry, and clothing, the trial court treated the 47% of Mr. Hunt's DuPont pension that was earned before the marriage as separate property. The court likewise treated 25% of Ms. Hunt's Oscar Mayer pension as her separate property, as well as the pre-marital appreciation in the value of her home, and the funds remaining from her workers' compensation settlement and the lump sum Social Security disability payment.

Hunt to assume $18,000 (27%).[5] The net effect of the court's distribution of the marital property and debts was that Ms. Hunt received 77% of the net marital estate, while Mr. Hunt received 23%. Specifically addressing the spousal support question, the trial court observed that it had awarded the "greater part" of the marital estate to Ms. Hunt and had onerated Mr. Hunt with the greater part of the marital debt in order to enable Ms. Hunt to maintain the lifestyle to which she had become accustomed. Accordingly, the court declined to award Ms. Hunt additional spousal support[6] but did award her $2,000 to defray part of her legal expenses.[7]

Ms. Hunt filed a Tenn. R. Civ. P. 59 motion complaining that the trial court should have awarded her "a reasonable amount of permanent alimony and periodic monthly support" and that Mr. Hunt should be required to provide her with health insurance at his expense for three years. Mr. Hunt responded by arguing that the decree would enable Ms. Hunt to "continue a normal standard of living." He also informed the court that Ms. Hunt had received the parties' federal income tax refund and requested the court to divide the refund equally between them. The trial court conducted a hearing on July 7, 1997 and filed an order on July 10, 1997. On this occasion, the trial court directed Mr. Hunt to pay Ms. Hunt $4,200 in alimony in solido[8] and directed Ms. Hunt to use this money to retire the second mortgage on her house. The trial court also distributed the parties' $4,374 income tax refund by directing the parties to use $3,054 to repay their indebtedness to the Internal Revenue Service, to use $746 to pay the June and July 1997 mortgage payments on Ms. Hunt's house, and to pay the remaining $574 to Mr. Hunt.

# I.
## THE DIVISION OF THE MARITAL PROPERTY

Despite the fact that she received 77% of the parties' net marital estate excluding the parties' pensions, Ms. Hunt contends that the division of the marital property should have been even more

---

[5]The debts the trial court required Ms. Hunt to assume were the $13,500 first mortgage on her house and the $4,500 second mortgage. The monthly payments for these two mortgages amounted to $390.

[6]The trial court characterized Mr. Hunt's obligation to pay approximately $49,500 in marital debt as being "in the nature of support for" Ms. Hunt. While we do not disagree with the trial court's decision to place the burden of paying these debts on Mr. Hunt, we disagree with its characterization of the payments on these debts as being in the nature of spousal support. Ordering one of the parties to be responsible for paying a marital debt is more closely akin to the division of the marital estate because, as a general matter, the allocation of the parties' debts accompanies the division of the parties' marital property. However, requiring one party to make payments directly to the other party to enable that party to pay a marital debt can appropriately be considered a form of spousal support. This is precisely what the trial court did when it ordered Mr. Hunt to pay Ms. Hunt $4,200 to enable her to pay the second mortgage on her house.

[7]The trial court noted that Ms. Hunt had incurred more that $2,000 in legal expenses. However, it decided to award her only a portion of her fees because she "has some fault in the demise of this marriage, and she has some funds to apply to attorney fees and she has been left without any debt except on the home . . .."

[8]The trial court directed Mr. Hunt to pay Ms. Hunt $120 per month for thirty-five months.

-3-

favorable to her.  Specifically, she asserts that the trial court should have awarded her the unimproved 5.1-acre tract of property on Greenfield Lane in Castalian Springs that the parties purchased in May 1995 for $23,547, using $3,000 of Ms. Hunt's workers' compensation settlement as a down payment.  The parties estimated that the equity in the property at the time of the divorce hearing was between $9,000 and $10,500.  We perceive no basis for second guessing the trial court's decision to award this property, as well as its accompanying debt, to Mr. Hunt.

Dividing a marital estate is not a mechanical process but, rather, is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c) (1996).  The goal is to divide the marital property in an essentially equitable manner.  A division is not rendered inequitable simply because it is not precisely equal, *see Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every piece of marital property.  *See Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d at 168, and appellate courts accord great weight to a trial court's division of marital property.  *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973).  We ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence.  See *Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

The principle basis for Ms. Hunt's argument that the trial court should have awarded her the 5.1-acre tract is that the down payment for its purchase came from her Oscar Mayer workers' compensation settlement which is her separate property.  She does not, and indeed cannot successfully, argue that this property should be characterized as her separate property because it was purchased with her separate funds.  The property was titled in both parties' names as tenants by the entireties and both parties' income was used to make the payments on the property.

We cannot say that the evidence does not support the manner in which the trial court divided the parties' net marital estate.  Ms. Hunt is not entitled to a share of each piece of marital property.  In light of Mr. Hunt's financial contributions to the accumulation of the marital property and the fact that Ms. Hunt has already received 77% of the net marital estate, excluding the parties' pensions, we find that the manner in which the trial court divided the parties' marital estate was essentially equitable.

## II.
### SPOUSAL SUPPORT

Ms. Hunt also asserts that the trial court should have awarded her long-term support in addition to the alimony in solido earmarked for the payment of the second mortgage on her house. She insists that her monthly Social Security disability payments are less than one-half of her monthly

expenses and thus that the trial court's decision will prevent her from living in the style to which she had become accustomed during the marriage. We have determined that Ms. Hunt is entitled to spousal support for a longer term than that set by the trial court.

There are no hard and fast rules for spousal support decisions. *See Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1). *See Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234.

Tenn. Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. *See Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Wilson v. Moore*, 929 S.W.2d at 375. The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient. *See Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995); *Cranford v. Cranford*, 772 S.W.2d 48, 51 (Tenn. Ct. App. 1989). The statutory preference for rehabilitative support does not entirely displace other forms of spousal support. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991). Courts may award alimony in futuro or alimony in solido when the circumstances warrant.

Ms. Hunt has demonstrated that she needs more support than the trial court awarded her. We cannot conclude from this record that she has many employment options in light of the fact that she is receiving Social Security disability payments, that she is currently fifty-eight years old, and that she apparently possesses few marketable skills. She has been unemployed since 1992 and is taking care of her adult mentally handicapped daughter. In comparison to the $9,024 in government benefits she receives each year, Mr. Hunt has worked for the same employer for approximately thirty years and is earning approximately $54,700 per year.

From what this record shows, Ms. Hunt is currently economically disadvantaged in comparison with Mr. Hunt. Although she insists that she is disabled, we cannot discern the nature of her disability from this record, and thus, we are unable to determine whether Ms. Hunt will be

able to work, either full or part-time in the future. Because Ms. Hunt has not carried her burden of proving that she is incapable of working at any job, we have determined that the trial court cannot be faulted for declining to award her rehabilitative alimony.

In light of the length of the marriage, Mr. Hunt's superior earning power, the manner in which the trial court divided the parties' assets and debts, and the fact that both parties, according to the trial court, are responsible for the break up of the marriage, we have determined that the Ms. Hunt should continue to receive $120 per month in spousal support through January 2007. Accordingly, on remand, we direct the trial court to enter an order requiring Mr. Hunt to pay Ms. Hunt $120 per month in spousal support from July 2000[9] through January 2007. Neither the amount nor the duration of this support shall be subject to modification because of changed circumstances or any other reason.

### III.
### MS. HUNT'S APPELLATE LEGAL EXPENSES

As a final matter, Ms. Hunt requests this court to require Mr. Hunt to pay the legal expenses she incurred on this appeal. As a general matter, we decline to make awards for appellate legal expenses when both parties are partially successful on appeal. *See Young v. Young*, 971 S.W.2d 386, 393 (Tenn. Ct. App. 1997); *Storey v. Storey*, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992); *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973); *Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at *6 (Tenn. Ct. App. Oct. 21, 1998) (No Tenn. R. App. P. 11 application filed). Because Ms. Hunt's appeal has been only partially successful, we deny her request for an additional award for the legal expenses she has incurred on appeal.

### IV.

We affirm the judgment as modified herein, and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal in equal proportions to Lois J. Hunt and her surety and to Tommy Louis Hunt for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[9]Mr. Hunt should have paid the $4,200 in alimony in solido ordered by the trial court by June 2000.