IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 17, 2000 Session

**BOBBY F. CONLEE v. JUANITA RICE CONLEE**

**Direct Appeal from the Chancery Court for Tipton County
No. 17, 032; The Honorable Martha Brasfield, Chancellor**

---

**No. W2000-00471-COA-R3-CV - Filed January 5, 2001**

---

This appeal involves a divorce ending a fourteen year marriage. The trial court granted the husband a divorce and divided the property. On appeal, the wife takes issue with the division of marital property, and the failure of the trial court to award her alimony or attorney's fees. For the following reasons, we affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

J. Thomas Caldwell, for Appellant

T. D. Forrester, for Appellee

**OPINION**

**Facts and Procedural History**

Bobby F. Conlee ("Husband") and Juanita Rice Conlee ("Wife") were married on June 26, 1986. Husband was fifty-six years old, and Wife was fifty-one. It was the Husband's second marriage and the Wife's eighth marriage. Husband worked as a laboratory technician at Proctor and Gamble for thirty-three years prior to the marriage, and he earned a yearly salary of approximately $30,000.00. Husband was approximately four years from retirement at the time of the marriage. Wife worked as an insurance agent, and her yearly earnings were between $25,000.00 and $30.000.00.

Husband entered into the marriage with a separate estate that included the following: (1) a one-half interest in a home in Mississippi with an estimated value of $85,000.00 - $100,000.00 and an existing debt of $34,096.56; (2) a tractor and various other farm equipment; (3) a pickup truck; (4) a vested interest in a pension plan at Proctor and Gamble; and (5) a small amount of cash.

Wife entered into the marriage with a separate estate that included the following: (1) a house and lot in Memphis, Tennessee, which was being used as rental property, with a value of approximately $45,000.00 and an existing debt of approximately $8,500.00; (2) a Ford Taurus with a disputed amount of debt (Wife stated that the debt was approximately one-half of the value of the car, but Husband stated that the debt equaled or exceeded the value of the car); (3) a vested interest in a civil service retirement plan; and (4) a small amount of cash.

After their marriage, the parties resided in the Husband's home in Mississippi, and the Wife continued to rent out her home in Memphis. The parties never lived in the Wife's Memphis rental home, and the house was never titled in their joint names. Furthermore, the Mississippi home was never titled in the Wife's name.

In June of 1988, the parties, along with with Wife's sister and brother-in-law, co-purchased a chalet in Gatlinburg, Tennessee. The parties' share of the purchase price was $7,000.00, which they obtained by borrowing money, using the Mississippi house as collateral. In 1989, the chalet was sold, and the parties' share of the net sale proceeds was $9,000.00. The parties were separated at this time, and the proceeds from the sale of the chalet were divided equally.

By October of 1989, the parties had reconciled and purchased a home in Seymour, Tennessee, for $78,265.70. The Wife applied her $4,500.00 share of the chalet sale proceeds on the down payment, and Husband borrowed money on his Mississippi house for the remainder of the down payment. Husband retired in early 1990, receiving pension plan funds totaling $315,359.48 and seventy-two shares of Proctor and Gamble stock. Husband placed the money into individual retirement accounts ("IRA"). In March of 1990, Husband withdrew $17,000.00 from an IRA to pay a note on the Seymour house which was due on April 1, 1990. The monthly mortgage payments on the Seymour home were paid from the parties' joint account.

On April 20, 1992, the parties received a personal injury settlement of $31,152.00 for injuries they received in an automobile accident that occurred on October 15, 1990. The trial court found that the settlement proceeds were used for routine living expenses. Wife was involved in another automobile accident for which she received another settlement of approximately $7,900.00. The court below also found that this settlement was used by the parties for routine living expenses.

In June of 1990, the Mississippi house was sold, and the mortgages on the Mississippi house were paid. In September of 1994, the parties moved to Tipton County, Tennessee, and purchased a home in Covington. The gross purchase price was $86,594.56. The purchase was funded with a bank loan and with a cash payment of $24,050.40 taken from a $28,000.00 withdrawal from Husband's IRA. In November of 1994, the house in Seymour, Tennessee was sold. The cash proceeds of $24,050.40 from the sale of the Seymour home were used to replace Husband's $28,000.00 IRA withdrawal. The estimated value of the Covington house at the time of trial was $95,000.00, with an outstanding debt of approximately $48,000.00.

In November of 1994, Wife received a lump-sum distribution of approximately $10,000.00 from Capital Holding Corporation Thrift Savings Plan. These funds were retirement benefits that Wife earned beginning in 1987 while working for the insurance company. These proceeds were placed in Wife's separate account and were not commingled with the parties' joint funds.

Since the parties separation in 1998, Wife has remained in the Covington home. Before their separation, the parties paid the mortgage from their joint account. Since their separation, however, Husband paid the mortgage payments and utility bills pursuant to court order.

The trial court awarded the divorce to the husband, finding him to be the more credible witness. The trial court awarded the following property to the Wife: 1) the house in Memphis, Tennessee; 2) her monthly retirement benefits from Commonwealth Insurance ($414.00 per month); 3) her social security benefits of approximately $535.00 per month; 4) her certificates of deposit valued at approximately $3,000.00; 5) her lump-sum retirement of approximately $10,000.00; 6) 125 shares of Proctor and Gamble stock and $12,196.86 in cash (one-half of the amount of Husband's retirement funds that accumulated during the marriage); 7) various items of furniture and appliances; 8) the car she is presently driving; and 9) one-half of the net proceeds from the sale of the Covington house.

The court awarded Husband the following property: 1) the house in Mississippi; 2) the remainder of the Proctor and Gamble stock after Wife receives her 125 shares; 3) the remainder of all cash, retirement accounts, bank accounts, etc., less the $12,196.86 to the Wife; 4) his Social Security ($900.00 per month); 5) various items of furniture; 6) the van he currently drives and a pickup truck; and 7) one-half of the net proceeds from the sale of the Covington house.

Wife appeals the decision of the trial court, raising the following issues, as we perceive them, for this court's review:

1. Whether the court erred in making a property division.
2. Whether the court erred in failing to award Wife alimony in futuro.
3. Whether the court erred in failing to award Wife her reasonable attorney fees.

**Law and Analysis**

First, Wife argues that the court erred in making a property division. Dividing a marital estate begins with the classification of the property as either separate or marital property. See McClellan v. McClellan, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993). "Marital property" is defined as follows:

> [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing or up to the date of the legal

> separation hearing unless equity would require another valuation date and owned by either or both spouses as of the date of filing of a complaint for divorce or complaint for legal separation . . . and valued as of a date as near as reasonably possible to the final divorce hearing date or the date of the legal separation hearing.

TENN. CODE ANN. § 36-4-121(b)(1)(a)(Supp. 2000).

After characterizing the parties' assets as either marital or separate property, the trial court will make an equitable division of marital assets. An equitable division of property does not necessarily mean an equal division. See Bookout v. Bookout, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997); Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). This court has stated that "the division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." King v. King, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citing Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn. 1996); Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn. 1988); Brown v. Brown, 913 S.W.2d 163 (Tenn. Ct. App. 1994)). In determining what constitutes an equitable division of marital assets, the court will consider the factors listed in section 36-4-121(c)[1] of the Tennessee Code. The trial court's classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if the evidence preponderates against the court's decision. See Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Hardin v. Hardin, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). The appellate courts of this state are not inclined to disturb a trial court's division of marital property unless they find that the distribution lacked proper evidentiary support or results from either

---

[1] Section 36-4-121(c) of the Tennessee Code provides:
In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.
Tenn. Code Ann. § 36-4-121(c) (Supp. 2000)

an error of law or a misapplication of the statutory requirements. See Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990).

The Wife's main assignment of error regarding the division of marital property deals with the Husband's Morgan Keegan funds. Upon his retirement from Proctor and Gamble, Husband received approximately $315,000.00 in cash and 72 shares of Proctor and Gamble stock. Husband placed this money with several financial institutions to take advantage of F.D.I.C. insurance. Husband also invested approximately $44,000.00 with Morgan Keegan. From an initial investment of $44,000.00, Husband's Morgan Keegan account had grown to approximately $220,000.00 at one time, and the balance was approximately $166,000.00 at the time of trial.[2] The trial court determined that $24,393.72 of the Proctor and Gamble retirement money and 24.869 shares of stock were accumulated during the parties' marriage. The Proctor and Gamble stock split during the marriage and had increased to 427 shares of stock. As a result, the trial court awarded Wife one-half of the $24,393.72, or $12,196.86, in cash, and additional shares of stock for a total of 125 shares pursuant to section 36-4-121(b)(1)(B)[3] of the Tennessee Code.

On appeal, Wife argues that she is also entitled to a share in the appreciation of Husband's Morgan Keegan investment account. In its final decree of divorce, the court below stated that "during the marriage, the parties used the interest from the cash and part of the corpus for living expenses. This money [retirement funds] has now depleted to approximately $247,000.00 [from the original $315,000.00]. There is no accumulation or increase of cash to be divided between the parties." We agree. While the individual Morgan Keegan account increased in value, the sum of the retirement funds had been depleted. The parties lived off of interest and withdrawals from the corpus of the Husband's retirement funds. The total of Husband's retirement funds had been depleted from the original $315,000.00 to approximately $247,000.00. As a result, there was no increase or appreciation from Husband's retirement funds to divide.

Generally, the fairness of the property division is judged upon its final results. See Wade v. Wade, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994). Considering all relevant factors including those enumerated in section 36-4-121(c) of the Tennessee Code, we do not find the final results of the trial court's distribution to be inequitable.

Next, Wife claimed that her home had been robbed in November 1999. The chancellor below held a hearing regarding the alleged theft and determined that Wife could not prove by a preponderance of the evidence that Husband was the one who had taken the items. In the decree of divorce, the chancellor ruled that Husband will not be required to transfer the Proctor and Gamble

---

[2] The reason for the depletion of funds in the account is that the trial judge authorized Mr. Conlee to remove approximately $60,000.00 from the account in order for him to purchase a home.

[3] Section 36-4-121(b)(1)(B) of the Tennessee Code provides:
"Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation. . . .
Tenn. Code Ann. §36-4-121(b)(1)(B) (Supp. 2000).

stock that was awarded to Wife until such time as the Wife allows the Husband to obtain either possession of the items awarded to him, or until such time as Wife files a proper claim with her insurance company for theft of the items taken and gives forty percent of such insurance proceeds to Husband. In her brief, Wife argues that she cannot be held responsible to deliver property to Husband that she does not have, and she asks this court to modify the court's decree in that respect. We find that Wife is not being asked to deliver non-existent property. In contrast, Wife is simply being asked to file a proper insurance claim regarding the stolen items and remit forty percent of the proceeds to Husband. We find no error with the trial court's ruling on this issue.

Next, Wife asserts that the trial court erred in failing to award her alimony in futuro. There are no hard and fast rules for spousal support decisions. See Crain v. Crain, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); Stone v. Stone, 409 S.W.2d 388, 392-93 (1966). Trial judges have broad discretion to determine whether spousal support is needed and if so, its nature, amount, and duration. See Garfinkel v. Garfinkel, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); Jones v. Jones, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989). Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. See Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Alimony decisions hinge on the unique facts of the case and require a careful balancing of the factors in section 36-5-101(d)(1)[4] of the Tennessee Code. See Hawkins v. Hawkins, 883 S.W.2d

---

[4] Section 36-5-101(d)(1) of the Tennessee Code provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(continued...)

622, 625 (Tenn. Ct. App. 1994); Loyd v. Loyd, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. See Varley v. Varley, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); Crain v. Crain, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996).

We have weighed the evidence in light of the factors in section 36-5-101(d)(1) of the Tennessee Code. We note that both parties are in poor health and are unable to maintain gainful employment. Additionally, Husband receives approximately $900.00 per month in Social Security, and Wife will receive her retirement and Social Security benefits, which will also total approximately $900.00 per month. Finally, we note that Wife received an equitable share of the marital assets. While neither party has the funds to live separately in the manner they lived prior to the divorce, Wife has a house in which to live and sufficient income to meet her expenses. Based on these considerations, we find no error in the trial court's denial of spousal support to Wife. As a result, this issue is without merit.

Finally, Wife asserts that the trial court erred in failing to award her attorney's fees. In a divorce action, an award of attorney's fees is treated as alimony. See Smith v. Smith, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995); Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). The decision to award attorney's fees lies within the sound discretion of the trial judge, see Aaron v. Aaron, 909 S.W.2d 408, 411 (Tenn. 1995); Brown v. Brown, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994), and we will not interfere with the trial judge's decision unless the evidence preponderates against it. See Batson v. Batson, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988). A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would be required to deplete other assets to do so. See Brown v. Brown, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994).

Under the facts of this case, we conclude that Wife should be responsible for her own legal expenses. She has received sufficient funds from the division of the marital estate to enable her to pay her attorney.

---

[4](...continued)

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training, or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties. . . .

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000).

**Conclusion**

Accordingly, for the aforementioned reasons, we affirm the judgment of the trial court. Costs are taxed to the Appellant, Juanita Rice Conlee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE