IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 2, 1998 Session

## CAROLYN DONNA JARVIS v. THOMAS HOLLAND JARVIS

**Appeal from the Circuit Court for Rutherford County**
**No. 36253     Don R. Ash, Judge**

─────────────

**No. M1998-00905-COA-R3-CV - Filed November 9, 2000**

─────────────

This appeal involves the dissolution of a five-year marriage in the Circuit Court for Rutherford County. Following a bench trial, the trial court granted the wife a divorce on the ground of inappropriate marital conduct, divided the marital estate, and ordered the husband to pay long-term spousal support. The trial court also directed the husband to maintain the wife's health insurance for three years and to reimburse her for medical expenses incurred prior to the divorce. On this appeal, the husband takes issue with the decision to award the wife the divorce, the classification and division of the marital property, and the long-term spousal support award. We have determined that the spousal support award should be modified and that the remaining portions of the trial court's decree should be affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified in Part and Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and HENRY F. TODD, SP. J., joined.

Randle W. Hill, Jr., Nashville, Tennessee, for the appellant, Thomas Holland Jarvis.

John B. Melton, III, Murfreesboro, Tennessee, for the appellee, Carolyn Donna Jarvis.

### OPINION

Carolyn Jarvis and Thomas Jarvis met in the early 1990s. Mr. Jarvis, then approximately fifty-three years old, worked as an operations manager at Genesco. Ms. Jarvis was ten years younger than Mr. Jarvis and was unable to work because of several auto-immune disorders, including degenerative nerve disease and liver disease. Both parties had been married three times before, and each of their marriages had ended in divorce. They began living together in early 1991 and were eventually married in August 1992. Mr. Jarvis was aware of Ms. Jarvis's medical problems, but neither he nor Ms. Jarvis fully appreciated their severity.

The parties built a home in Murfreesboro following the marriage. They anticipated that Mr. Jarvis would work until he was eligible for early retirement and that they would then move to Florida to live on their boat. They used Mr. Jarvis's salary for most of their living expenses, including the

additional premiums for covering Ms. Jarvis under Genesco's group health plan. When Ms. Jarvis began receiving monthly disability benefits, she kept these funds in a separate account but used a portion of them to purchase groceries, to pay her medical insurance premiums, and to pay for the cost of the prescription medications not covered by health insurance.

Ms. Jarvis's health continued to deteriorate, and her stays in the hospital became longer and more frequent. The parties paint strikingly different pictures of the effect that Ms. Jarvis's illness had on their relationship. Ms. Jarvis asserts that Mr. Jarvis was unsympathetic and resentful about being required to support her. She claims that Mr. Jarvis frequently complained about her inability to maintain the household and to tend to his needs and that he repeatedly reminded her that she would have nothing were it not for the health insurance he was providing. For his part, Mr. Jarvis asserts that he was a good companion to Ms. Jarvis and that he supported her as best he could throughout the marriage. According to Mr. Jarvis, he accompanied Ms. Jarvis on her extended hospital visits and nursed her when she was ill or fatigued.

Ms. Jarvis's illness continued to place a strain on the parties' relationship. In October 1993, one of their arguments led to physical violence, and Mr. Jarvis was arrested for assault. In early 1994, Ms. Jarvis moved into her daughter's house but returned to the marital home four or five months later. The parties' relationship did not improve, and Ms. Jarvis moved out of the marital home for good in February 1996. On February 22, 1996, Ms. Jarvis filed suit in the Circuit Court for Rutherford County, seeking a divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Mr. Jarvis counterclaimed for a divorce on the same grounds and asserted that Ms. Jarvis was not entitled to any sort of spousal support because of the shortness of the marriage.

Mr. Jarvis met Patricia Edge in December 1996 and within a short time struck up a romantic relationship with her. In June 1997, Ms. Edge moved into the marital home with Mr. Jarvis. Three months later, Mr. Jarvis informed Ms. Jarvis that she would not be covered by Genesco's group health insurance plan after January 1, 1998.

Following a bench trial in December 1997, the trial court filed an order on January 16, 1998, granting Ms. Jarvis a divorce on the ground of inappropriate marital conduct. The trial court also divided the marital property by awarding Ms. Jarvis $12,000 of the equity in the parties' home, $13,000 of the increase in the value of Mr. Jarvis's retirement during the marriage, and various other items of personal property. The trial court also directed Mr. Jarvis to pay Ms. Jarvis $500 per month in long-term spousal support until her death or remarriage, to maintain Ms. Jarvis's medical insurance for thirty-six months, and to pay her $3,000 for medical expenses incurred prior to the divorce.

## I.
### THE AWARD OF THE DIVORCE TO MS. JARVIS

Mr. Jarvis first takes issue with the trial court's decision to award the divorce to Ms. Jarvis because of his romantic involvement with Ms. Edge. He asserts that this relationship should not supply grounds for divorce because it did not begin until after he and Ms. Jarvis had separated. Mr.

Jarvis's argument fails for two reasons. First, a party's post-separation conduct may be considered when determining which party should be awarded the divorce. Second, even if Mr. Jarvis's post-separation affair with Ms. Edge were not considered, the record contains ample evidence of Mr. Jarvis's inappropriate marital conduct during the portion of the marriage when the parties were still living together.

Conduct occurring after the parties have separated may provide grounds for awarding a divorce. Accordingly, both this court and the Tennessee Supreme Court have upheld divorces on the ground of adultery when the extramarital sexual relations occurred after the parties had separated. *Clark v. Clark*, 644 S.W.2d 681, 682 (Tenn. Ct. App. 1982); *Schwalb v. Schwalb*, 39 Tenn. App. 306 328, 282 S.W.2d 661, 671 (Tenn. Ct. App. 1955). Adulterous acts provide a basis for awarding a divorce on the ground of inappropriate marital conduct as defined in Tenn. Code Ann. § 36-4-102(11) (Supp. 1999). *Farrar v. Farrar*, 553 S.W.2d 741, 744 (Tenn. 1977); *Spencer v. Spencer*, No. 01A01-9109-CV-00328, 1992 WL 247641, at *2 (Tenn. Ct. App. Oct. 2, 1992) (No Tenn. R. App. P. 11 application filed). Accordingly, the trial court did not err in basing its decision to grant the divorce to Ms. Jarvis on Mr. Jarvis's post-separation relationship with Ms. Edge.

While not minimizing Mr. Jarvis's post-separation relationship with Ms. Edge, we find that the record contains stronger evidence to support granting Ms. Jarvis a divorce based on inappropriate marital conduct. This evidence involves the way that Mr. Jarvis treated Ms. Jarvis during the marriage prior to the separation. Mr. Jarvis placed demands on Ms. Jarvis that were inappropriate in light of her illness. Despite his knowledge that Ms. Jarvis has a serious and debilitating illness, Mr. Jarvis expected Ms. Jarvis to clean the house, do the laundry, prepare the meals, and otherwise maintain the household. As time went on, Mr. Jarvis became intolerant of his wife's physical limitations and resented being required to support her. Finally, in October 1993, he was arrested for assaulting Ms. Jarvis. Even though these charges were eventually dismissed, we have concluded that Mr. Jarvis's conduct during the later stages of the marriage was clearly inappropriate and that it provided more than sufficient evidence to support granting Ms. Jarvis the divorce based on inappropriate marital conduct.

## II.
### DIVISION OF THE MARITAL ESTATE

Mr. Jarvis next takes issue with the trial court's division of the marital estate. Specifically, he asserts that the trial court should not have awarded Ms. Jarvis a portion of his 401(k) account because she did not contribute to the increase in its value. He also asserts that Ms. Jarvis should not have received any portion of the equity in the martial home in Murfreesboro because he provided the funds to construct it.

An integral part of the process of dividing the property interests of divorcing parties is the identification and distribution of the parties' separate property. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Property should not be included in the marital estate unless it is marital property as defined in Tenn. Code Ann. § 36-4-121(b)(1)(A) (1996). *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property cannot, by definition, be included in the marital estate, and Tenn. Code Ann. § 36-4-121(b)(2)(D) provides that property acquired by a spouse during a marriage by "gift, bequest, devise or descent" is separate property. Thus, gifts by one

spouse to another that might otherwise be considered martial property should be classified as the recipient spouse's separate property. *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989); *Batson v. Batson*, 769 S.W.2d at 859.

Dividing a marital estate is not a mechanical process, but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994), and appellate courts accord great weight to a trial judge's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

In accordance with Tenn. Code Ann. § 36-4-121(c)(1), trial courts consider the duration of the marriage when making an equitable division of marital property. In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place. *Batson v. Batson*, 769 S.W.2d at 859. Each spouse's contributions to the accumulation of assets during the marriage is an important factor when a relatively short marriage is involved. When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property based on non-monetary contributions are minimal at best. *Batson v. Batson*, 769 S.W.2d at 859.

These parties were married only five years. Given the relatively short duration of their marriage, our primary goal would normally be to place the parties in approximately the same position they were in before the marriage. However, attempting to return the parties to the pre-marriage status quo may not be equitable in this case in light of Ms. Jarvis's declining health and the distinctive evidence of her financial need.

Ms. Jarvis's marriage to Mr. Jarvis did not adversely affect her financial condition. She brought no significant assets to the marriage, and she made only modest financial contributions to the marriage because her illness prevented her from working. Her marriage to Mr. Jarvis brought her financial security she would never have been able to obtain on her own. However, returning Ms. Jarvis to her pre-marriage circumstances without more would essentially leave her destitute because her only source of income consists of $660 per month in Social Security benefits. Thus, despite the relatively short duration of the marriage, we have concluded that giving Ms. Jarvis credit for her non-monetary contributions to the marriage is appropriate under the facts of this case.

The trial court found that Mr. Jarvis's 401(k) plan increased by $22,011 during the marriage and awarded Ms. Jarvis $13,000 of this increase. Mr. Jarvis argues that Ms. Jarvis is not entitled to any portion of the appreciation in the value of his retirement during the marriage because the retirement fund is not marital property and because Ms. Jarvis did not contribute to its increase in value. Pension rights accrued during a marriage will be classified as marital property even though the non-employee spouse did not make direct contributions to the increase in the pension's value.

Only pension rights accruing during the marriage will be considered marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A)-(B); *Kendrick v. Kendrick*, 902 S.W.2d 918, 926 (Tenn. Ct. App. 1994); *Batson v. Batson*, 769 S.W.2d at 857. Accordingly, the trial court correctly determined that the $22,011 increase in Mr. Jarvis's 401(k) plan during the parties' marriage is marital property.

When retirement benefits become part of the marital estate, they are subject to the same considerations as other property during the equitable division. The division need not be mathematically equal, but must reflect essential fairness in light of the facts. *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kendrick v. Kendrick*, 902 S.W.2d at 929. We agree with the trial court's conclusion that the amount of increase in Mr. Jarvis's 401(k) plan was at least in part attributable to Ms. Jarvis's contributions to the household. Under these circumstances, we conclude that the $13,000 portion of Mr. Jarvis's retirement plan awarded to Ms. Jarvis by the trial court was a fair distribution.

We turn next to the distribution of the equity in the Murfreesboro house. The trial court valued the house at $160,000 and determined that there was $48,000 in equity in the home. The trial court awarded Ms. Jarvis $12,000 as her share in the equity of this marital asset. We find no basis to second-guess this decision. Even though Mr. Jarvis provided the funds to build the house, the trial court concluded that the house was marital property because (1) the parties held the property as tenants by the entirety, (2) Ms. Jarvis played an active role in the construction of the house, and (3) Ms. Jarvis performed housekeeping and undertook other maintenance activities regarding the house. These activities provide a sufficient basis for awarding Ms. Jarvis twenty-five percent of the equity in the Murfreesboro house.

As a result of the trial court's division of the martial property, Ms. Jarvis received approximately thirty-six percent of the value of these disputed marital assets. In light of the duration of the marriage, the manner in which the trial court classified and divided the other assets, the significant amount of separate property awarded to Mr. Jarvis, and the other factors in Tenn. Code Ann. § 36-4-121(c), we have determined that the trial court properly classified the disputed property and that the trial court's division of the disputed assets was equitable in light of the facts of this case. Accordingly, we affirm the trial court's decision to award Ms. Jarvis $13,000 for her share in increase in the value of Mr. Jarvis's 401(k) plan during the marriage and $12,000 for her share in the equity in the Murfreesboro house.[1]

### III.
#### THE SPOUSAL SUPPORT AWARD

As a final matter, Mr. Jarvis asserts that it is inequitable in light of the shortness of the marriage to require him to pay open-ended, long term spousal support and to require him to pay Ms. Jarvis's health insurance premiums for thirty-six months. We have determined that some spousal support is warranted in this case in light of the duration of the marriage, the clear disparity in the parties' earning capacity, Mr. Jarvis's knowledge of Ms. Jarvis's medical condition when he married her, and Mr. Jarvis's conduct during the marriage. Thus, we have determined that the trial court

---

[1] As the trial court provided in its January 16, 1998 order, Mr. Jarvis may pay Ms. Jarvis the required $25,000 from any of his accounts. He is not required to sell the Murfreesboro house or to liquidate his 401(k) plan.

correctly ordered Mr. Jarvis to maintain Ms. Jarvis's health insurance for three years following the divorce. We have also determined that the trial court properly determined that Mr. Jarvis should pay $500 per month in spousal support. However, rather than leaving the term of this support open-ended, we have determined that Mr. Jarvis should be required to pay this support for five years following the entry of the divorce decree.

There are no hard and fast rules for spousal support decisions. *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); *Stone v. Stone*, 56 Tenn. App. 607, 615-16, 409 S.W.2d 388, 392-93 (1966). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Brown v. Brown*, 913 S.W.2d at 169; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

Spousal support decisions hinge on the unique facts of the case and require a careful balancing of the factors in Tenn. Code Ann. § 36-5-101(d)(1). *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In virtually every case, the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996); *Crain v. Crain*, 925 S.W.2d at 234. Even though fault is a relevant consideration when setting spousal support, Tenn. Code Ann. § 36-5-101(d)(1)(K), spousal support decisions are not intended to be punitive. *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. 1984); *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Isbell v. Isbell*, 816 S.W.2d 735, 739 (Tenn. 1991).

We recognize that in the case of marriages of short duration, the justification for spousal support is diminished when the spouse seeking support has contributed little, directly or indirectly, to the marriage. *See Crain v. Crain*, 925 S.W.2d at 234; *Flanagan v. Flanagan*, 656 S.W.2d 1, 3-4 (Tenn. Ct. App. 1983). However, we have also recognized that a spouse's medical condition may provide a basis for awarding spousal support. *See generally Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. Ct. App. 1989) (awarding one spouse support based on her medical needs and the other spouse's ability to pay).

Ms. Jarvis's medical condition leaves her economically disadvantaged compared to Mr. Jarvis. While Mr. Jarvis's annual income from all sources is approximately $63,250, Ms. Jarvis's annual Social Security payments amount to approximately $7,920. Ms. Jarvis is unemployable and owns no other type of income-producing property or pension plans. In addition, she is faced with mounting medical bills as her illness progresses. During the marriage, Ms. Jarvis used part of her meager income for the parties' groceries and to defray the cost of her medications that were not covered by insurance. In light of these monetary contributions and her efforts to provide non-monetary contributions to the marriage, we concur with the trial court's decision that Mr. Jarvis should pay Ms. Jarvis $500 per month in spousal support. However, because of the shortness of the marriage and the fact that Ms. Jarvis is suffering from an illness that existed prior to the marriage,

we have determined that this support obligation should be for a term similar to the length of the marriage itself. Accordingly, we have determined that Mr. Jarvis's obligation to pay $500 in monthly spousal support should exist for five years from the date of the entry of the divorce decree.

Ms. Jarvis has extensive medical problems and is essentially uninsurable at this time. However, Mr. Jarvis may maintain Ms. Jarvis's coverage under his employer-provided group health insurance plan for thirty-six months following the divorce. The cost of health care is a proper expense item to consider when awarding alimony. *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); Janet L. Richards, *Richards on Family Law* §12-5(a) (1997 & Supp. 2000). Accordingly, we affirm the portions of the order directing Mr. Jarvis to maintain COBRA health insurance coverage for Ms. Jarvis by paying the $180 monthly premium for thirty-six months, and to pay Ms. Jarvis or her health care providers an additional $3,000 for medical expenses incurred prior to the divorce. Mr. Jarvis shall be entitled to a credit against his $500 monthly spousal support obligation for the payment of each $180 monthly premium made to maintain Ms. Jarvis's health insurance.

## IV.

We affirm the trial court's decision to grant Ms. Jarvis a divorce on the ground of inappropriate marital conduct and the manner in which the trial court classified and divided the parties' marital estate. We also affirm the trial court's decision to require Mr. Jarvis to maintain Ms. Jarvis's health insurance and to pay the premiums for this insurance for three years. We modify the trial court's spousal support award to limit its duration to five years from the entry of the final divorce decree. We tax the costs to Thomas Holland Jarvis and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE