IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 22, 2017 Session

## TRACY LYNN HALLUMS v. BRUCE ALAN HALLUMS

**Appeal from the General Sessions Court for Wilson County**
**No. 2014DC160     John Thomas Gwin, Judge**

———————————————

**No. M2016-00396-COA-R3-CV**

———————————————

In this divorce action, the trial court awarded alimony *in futuro* and attorney's fees to Wife; Husband appeals both awards. Concluding that the court did not make adequate findings as to whether rehabilitative or transitional alimony was feasible, we vacate the award of alimony *in futuro* and remand for further consideration of the nature and duration of the alimony award; we affirm the trial court's award of attorney's fees to Wife; and we decline to award attorney's fees to either party for the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Vacated in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

John L. Meadows, Lebanon, Tennessee, for the appellant, Bruce Alan Hallums.

Melanie R. Bean, Lebanon, Tennessee, for the appellee, Tracy Lynn Hallums.

### OPINION

This is an appeal from a final decree of divorce following a 25-year marriage in which the court awarded alimony *in futuro* and attorney's fees to the Wife. Tracy Hallums ("Wife") and Bruce Hallums ("Husband") were married on October 6, 1990, in Lebanon, Tennessee. Two children were born to the marriage, one of whom was a minor at the time of trial. Wife filed for divorce on October 15, 2014, on the grounds of irreconcilable differences or, alternatively, inappropriate marital conduct; Husband answered and filed a counter-complaint for divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Mediation was unsuccessful, and the case proceeded to trial on November 2, 2015. Wife, Husband, and Husband's paramour testified at trial.

The trial court awarded the divorce to Wife on the grounds of Husband's inappropriate marital conduct and adultery; named Wife as primary residential parent of the youngest child, adopted Mother's parenting plan, and set child support; and classified and divided the marital property and debts. Pertinent to this appeal, the court awarded Wife alimony *in futuro* in the amount of $1,500.00 per month and awarded her a judgment in the amount of $13,949.50 for attorney fees and litigation expenses, awards which Husband appeals. Both parties seek their fees incurred on appeal.

## I. ANALYSIS

The standard of review of an award of alimony we employ was set forth in *Gonsewski v. Gonsewski:*

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew [v. Burlew],* 40 S.W.3d [465] at 470 [(Tenn. 2001)]; *Robertson v. Robertson,* 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn.2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010).

350 S.W.3d 99, 105 (Tenn. 2011) (footnote omitted).

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1).[1] There are no hard and fast rules for spousal support

---

[1] Alimony *in futuro*, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony *in solido* is also "a form of long-term support," *id.* at 108, and "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Rehabilitative alimony is "a separate class of spousal support," Tenn. Code Ann. § 36-5-121(e)(1), the purpose of which is "to assist an economically

decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). In determining whether to award spousal support, the trial court is required to consider "all relevant factors," including:

> (1)  The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3)  The duration of the marriage;
>
> (4)  The age and mental condition of each party;
>
> (5)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6)  The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7)  The separate assets of each party, both real and personal, tangible and intangible;
>
> (8)  The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9)  The standard of living of the parties established during the marriage;
>
> (10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
>
> (11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
>
> (12)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). "While a trial court should consider all the relevant factors under the circumstances, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay."

---

disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Gonsewski*, 350 S.W.3d at 108. Finally, transitional alimony may be awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded." Tenn. Code Ann. § 36-5-121(g)(1).

*Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *3 (Tenn. Ct. App. Jan. 28, 2010) (citing *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). Of these two factors, "the primary consideration is the disadvantaged spouse's need." *Id.*

### A. Alimony *in Futuro*

In dividing the marital property, the trial court made findings as to the factors at Tennessee Code Annotated section 36-4-121(c); the court then proceeded to make additional findings relative to Wife's request for alimony pursuant to Tennessee Code Annotated section 36-5-121(i).[2] The court then reviewed the income and expenses statement of each party and determined that Wife had a need for alimony in the amount of $957.97 per month and Husband had the ability to pay alimony of $2,149.32 per month; the court concluded:

> To allow the parties to enjoy an equal ability to exercise vacation and recreation opportunities commensurate with those undertaken during the marriage. The Court finds that Wife is entitled to an award of alimony *in futuro* in the amount of $1,500.00 per month beginning January 1, 2016. In so doing, the Court has already taken into account the fact that Wife will no longer receive child support after approximately May of 2017.

Neither party contests the findings relative to Wife's need or Husband's ability to pay, or argues that the $1,500.00 is excessive or inadequate; accordingly, on the record before us, we decline to disturb these findings.[3] Husband argues that the court erred in making this award because "there is simply no evidence upon which for the trial court to find rehabilitation unfeasible given that the Wife presented 'no credible proof in the record regarding the cost [to seek additional college classes in preparation for her CPA examination].'" He also argues that the trial court "erroneously found that Husband was maintaining the pre-divorce standard of living and that Wife should also receive said standard of living" and that the court "incorrectly weighed Husband's relative fault in assessing alimony."[4]

---

[2] Taken together, the findings relative to factors (1), (2), (3), (4), (5), (7), (8), (9), (10), and (11) of section 36-5-121(i) were pertinent to the award of alimony.

[3] In his brief, Husband argues, without citation to the record, that "Wife has inflated her professed needs." In the order making the award, the Court addressed its own concerns with some of Wife's claimed expenses and deleted $298.97 in expenses attributable to the oldest child and $207.52 in duplicate health insurance expenses.

[4] While acknowledging his untruthfulness and deceit, Husband also argues that the court "incorrectly weighed Husband's relative fault in assessing alimony." Tennessee Code Annotated section 36-5-121(i)(11) mandates that the court consider "[t]he relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so." We have considered Husband's argument in this regard but

4

In determining to award alimony *in futuro*, the court stated with respect to Tennessee Code Annotated section 36-5-121(i)(2):

> Wife has the ability, and the time, to seek additional college classes in preparation for her CPA examination. There is no credible proof in the record regarding the cost of such a venture. The Court perceives that Wife is simply disinterested in pursuing vocational rehabilitation. The Court agrees that at her age, the benefit of such rehabilitation must necessarily be compared to the likelihood that to do so, she would have to give up her current employment and likely earn less money in the process.

Upon our review of the record, we conclude that the trial court did not make adequate findings relative to whether rehabilitation was feasible and whether an award of rehabilitative and/or transitional alimony would be appropriate. In the absence of such findings, we are unable to afford the trial court's decision the deference normally afforded to an award of alimony.

"[T]here is a statutory bias toward awarding transitional or rehabilitative alimony over alimony *in solido* or *in futuro*. While this statutory preference does not entirely displace long-term spousal support, alimony *in futuro* should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Gonsewski*, 350 S.W.3d at 109 (citing *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Robertson v. Robertson,* 76 S.W.3d 337, 341–42 (Tenn. 2002)). In this context, "rehabilitated" means that, with reasonable efforts, the economically-disadvantaged spouse will be able to achieve:

> an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(e)(1). The Supreme Court observed in *Gonsewski* that:

> Alimony *in futuro* "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs*, 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson*, 76

---

are not persuaded that the court abused its discretion in including the finding relative to this factor among those it considered in making the award nor in affording the finding the weight it did.

S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard*, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle...." *Id*. It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson*, 76 S.W.3d at 340.

*Gonsewski, 350 S.W.3d at 108.*

Wife testified that she had unsuccessfully attempted to pass the CPA exam after graduating from college and worked as a bookkeeper for approximately 14 years before leaving the workforce to homeschool the parties' children. She returned to the workforce in a bookkeeping and administrative role for an accounting firm in 2014 after Husband lost his job and the marriage relationship had begun to deteriorate. At that job, which she held at the time of trial, she earned approximately $40,000.00 per year, based on an hourly rate of $25.50, with an expected $.50 per hour raise once a year. She testified that she previously had thyroid cancer and was currently cancer free, but would be on a medication regimen for the rest of her life to "replace the thyroid function." She had no physical or mental condition that prevented her from working.

Consistent with the holding and rationale of *Gonsewski*, a lack of interest in rehabilitation on the part of the economically disadvantaged spouse does not alone entitle that spouse to long term alimony. Accordingly, we vacate the award of alimony *in futuro* and remand the case for the court to consider and make findings as to whether rehabilitation of Wife is feasible; if so, the court should determine the amount and duration of such award and whether an award of transitional alimony is also appropriate. If the court determines that rehabilitative or transitional alimony is not appropriate, the court is free to consider long-term support.[5]

### B. Award of Attorney's Fees at Trial

An award of attorney's fees in a divorce case constitutes alimony *in solido* and is within the discretion of the trial court. *Gonsewski*, 350 S.W.3d at 113. With respect to this award, the trial court stated:

---

[5] Our resolution of this issue pretermits our consideration of Husband's argument that "[his] willingness to place monies and properties out of the marital estate for use of the parties' children facilitated Wife's speculative needs and professed inability to improve her financial situation." We have not disturbed the findings that Wife has a need for and Husband has the ability to pay alimony, and the matters raised by Husband can be addressed in the consideration of whether short term alimony is appropriate.

6

As to the request for attorney fees, the Court finds that Wife is not awarded after-tax assets sufficient to allow her to pay her attorney fees. The Court also finds that but for Husband's perjured testimony at deposition and his failed attempt to mislead the Court at trial, Wife's attorney fees would have been less than those ultimately incurred. Accordingly, Wife is entitled to a money judgment against Husband in the full amount of her attorney fees and litigation expenses, to wit: Attorney fees in the amount of $13,949.50 (includes trial and Decree preparation), and litigation expenses of $1,115.00.

Husband contends that the award "was an abuse of discretion because . . . Wife's needs were inflated, and she had ample moneys to pay . . . things which are not easily categorized as 'needs.'"

In considering this issue, we again are guided by *Gonsewski*:

A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot,* 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. Ct. App.1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn. Ct. App.1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski,* 350 S.W.3d at 113.

In the division of marital property, Wife was awarded approximately 55 percent of the marital property, valued at slightly less than $296,000.00; the value of Husband's marital property was approximately $241,600.00. Husband correctly notes that Wife was awarded an investment account valued at $19,327.48 and 75 percent of an annuity account which was valued at $130,038.97. These assets, however, are investment accounts, which are not required to be depleted in order to pay fees in a divorce case. Further, the findings related to Husband's indiscretions and attempts to mislead the Court are not contested, and Husband cites to no evidence that would preponderate against any of the court's findings with respect to this award. Upon our consideration of the factors listed at Tennessee Code Annotated section 36-5-121(i), the disparity in the parties' financial resources, and our review of the affidavit of Wife's counsel regarding the time and charges incurred in representing Wife, we conclude that the court did not abuse its discretion in awarding Wife her attorney's fees and litigation expenses.

7

**C. Attorney's Fees on Appeal**

Both parties request their attorney's fees on appeal, a decision that is within our discretion. *See Seaton v. Seaton,* 516 S.W.2d 91, 93–94 (Tenn.1974); *Davis v. Davis,* 138 S.W.3d 886, 890 (Tenn. Ct. App. 2003).  In light of our disposition of this appeal, where we have vacated in part and affirmed in part the decision being appealed, we decline to award fees to either party.

## II. CONCLUSION

For the foregoing reasons, we vacate the award of alimony *in futuro* and remand the case for further consideration of the spousal support award; we affirm the trial court's award of attorney's fees to Wife.  We decline to award attorney's fees incurred in this appeal to either party.

RICHARD H. DINKINS, JUDGE